Steve ZITNEY and Jeannine Marie
Zitney, Appellants

v.

APPALACHIAN TIMBER PRODUCTS,
INC. and John Appleby t/d/b/a
Appleby Logging, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 31, 2012.

Filed July 3, 2013.

Stephen T. Taczak, Washington, for appellants.

Ronald D. Kristobak, Uniontown, for Appalachian Timber, appellee.

Micael E. Lang, Beaver, for Appleby, appellee.

BEFORE: MUSMANNO, J., WECHT, J., and COLVILLE, J.[*]

OPINION BY WECHT, J.:

Steve and Jeannine Zitney ("Appellants") appeal from the trial court's February 25, 2011 order denying Appellants' post-trial motion seeking judgment notwithstanding the verdict ("JNOV") and a new trial. We affirm.

On August 8, 2000, Appalachian Timber Products ("ATP") entered into a written contract to purchase and remove timber from property owned by Carl and Yasmin Brown ("the Browns") in Redstone Township, Fayette County, Pennsylvania ("the property").[1] The timber contract provided that ATP would harvest timber that was twelve inches in diameter or larger from the property. ATP agreed to harvest the timber within twenty-four months from the date that the contract was executed, and to do so in compliance with all Pennsylvania standards governing the removal of timber. The contract was not recorded.

Shortly after executing the contract, the Browns defaulted on the property's mortgage. The property was foreclosed upon, and the mortgagee bank received the deed to the property. The deed was recorded on February 20, 2001. On September 11, 2001, Appellants purchased the property. The deed conveying the property to Appellants, which contained no warranty of title, was recorded on October 30, 2001.

On October 7, 2001, within twenty-four months of executing the contract, ATP directed John Appleby and Appleby Logging (collectively, "Appleby") to enter the property and commence harvesting the timber. At the time that the harvesting began, Appellants were not occupying the property and had not yet recorded their deed. Upon learning of the harvesting operation, Appellants demanded that Appleby quit the property. Appleby immediately ceased the timber removal and left the property.

On November 15, 2002, Appellants filed a complaint in the Court of Common Pleas of Fayette County, averring that they were deprived of the value and use of the timber that was removed by Appleby. Appellants further alleged that the timber harvesting resulted in damage to: the remaining trees on the property; the poten-

---

[*] Retired Senior Judge assigned to the Superior Court.

1. The property consisted of approximately ten acres.

tial for additional tree growth; the topsoil covering the property; a stream that runs through the property; and the aesthetic quality of the property. ATP and Appleby answered the complaint, arguing that they were entitled by contract to harvest the timber and that they did so in a commercially reasonable manner.

Both ATP and Appleby filed motions for summary judgment. The trial court granted the motions in part, and denied them in part. The trial court found that the contract governed the removal of timber and that, as a result of that contract, Appellants could not recover the value of the removed timber. However, the trial court found that factual issues remained concerning whether Appleby's harvesting caused damage to the property and the value of any such damage. Appellants filed a motion for reconsideration of the trial court's order insofar as it granted the summary judgment motions in part. The trial court denied Appellants' motion for reconsideration.

The trial court next addressed a motion *in limine* filed by ATP and Appleby regarding damages. Appellants sought damages for Appleby's alleged negligence, the value of the timber, the removal of slash,[2] and the loss of value of the forest. Following briefing, the trial court limited damages to those arising from Appleby's failure to comply with the relevant terms of the timber contract, which contract required Appleby to observe all Pennsylvania laws governing the harvesting of timber.

Thereafter, the case proceeded to a jury trial. The facts presented at trial established the factual background presented above, as well as the following pertinent information. Marilyn Dugan, of the Fay-

ette County Conservation District, conducted earth-moving inspections of the property for the Pennsylvania Department of Environmental Protection ("DEP") and for the Fayette County Conservation District. After Appellants complained about the logging being done on their property, Ms. Dugan inspected Appellants' property on five separate occasions from October 2001 to July 2002. With each inspection, Ms. Dugan prepared a report to be submitted to the DEP. Each report indicated the various failures and defects that Ms. Dugan observed in the harvesting operation. Ms. Dugan repeatedly found that Appleby, whom she listed as the responsible party, failed to develop and have on hand an erosion and sediment control plan, failed to permanently stabilize the site, failed to implement the best management practices to prevent damage to the land, and failed to prevent sediment or other pollutant discharge into the waters.

Despite these findings, Ms. Dugan testified that, while she submitted the reports to the DEP, she never recommended that the DEP take any remedial actions because the property had healed itself. Indeed, neither Ms. Dugan nor the DEP (nor any other agency) filed any enforcement or punitive actions against Appleby as a result of the timber removal.

Appellant Steven Zitney testified that the land was not repairable, causing a decline in the market value of his property amounting to approximately $30,000. No other evidence was presented regarding the value of the property or the amount that it would cost to repair the alleged damage.

John Appleby testified that, because he was ordered off the property by Appel-

---

2. Our review of the record, briefs, and arguments indicates that "slash" refers to the debris left in the woods after logging, which may include severed tree tops, logs, chunks, bark, branches, uprooted stumps, and broken or uprooted trees or shrubs.

lants, while he performed his duties in compliance with state law, he initially was unable to complete not only the timber removal per the terms of the contract, but also any additional remedial work that the law does not require but that he normally would do under these circumstances. However, Appleby later met with Appellants, Ms. Dugan, and, eventually, a member of the Pennsylvania Fish and Game Commission, and discussed what needed to be done to stabilize the property. Once the work details were determined, Appleby returned to the property and performed work in an attempt to ensure that the property was stabilized.

At the charging conference, Appellants requested instructions on negligence and the special value of the property, which they first had sought in a written motion. The trial court denied both requests. Thereafter, the trial judge instructed the jury. The jury returned a verdict for ATP and Appleby. Appellants filed motions for JNOV and for a new trial, alleging that the verdict was not supported either by the law or the evidence. Moreover, Appellants alleged that it was error for the trial court to deny their requested jury instructions. On February 24, 2011, the trial court denied all of Appellants' requests for post-trial relief in an order that the court declared to be final and immediately appealable.

On March 28, 2011, Appellants filed a notice of appeal. On March 30, 2011, the trial court directed Appellants to file a concise statement of errors complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On April 21, 2011, Appellants timely complied. On January 30, 2012, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). This matter has been briefed and argued, and is ripe for our review.

Appellant raises the following six questions for our consideration:

1. Are [Appellants] entitled to recover damages for timber removed from their property under an unrecorded timber contract between [ATP] and the prior owner of the property when [Appellants] are subsequent bona fide purchasers?

2. Are [Appellants] entitled to recover damages for removal of slash (tree waste), remediation of slopes and streams, restoration of the property, and for the replacement costs for the forest?

3. Are [Appellants] entitled to proceed under a negligence theory against the [Appellees] for destroying [Appellants'] property as alleged in [Appellants'] complaint?

4. Are [Appellants] entitled to damages, and a jury instruction thereof [sic], based on the special value of the property?

5. Are [Appellants] entitled to judgment nov because the evidence established [that Appellants] violated the laws and regulations of the Commonwealth?

6. Are [Appellants] entitled to judgment nov because [Appellants] breached the contract?

Brief for Appellants at 3.

■ As a preliminary matter, we must address whether we have jurisdiction to consider this appeal. Our review of the docket entries in the certified record reveals that, following the trial court's denial of Appellants' post-trial motions, both ATP and Appleby praeciped the trial court to enter judgment. However, the docket is not clear that judgment was ever entered. The docket reflects only that "notice of entry of judgment sent to plaintiffs on March 4, 2011." Although it is not clear that judgment was entered, Appellants nonetheless filed an appeal.

We addressed a similar situation in *Fanning v. Davne*, 795 A.2d 388 (Pa.Su-

per.2002), wherein we set forth the law that applies to such a situation:

'Generally, an appeal will only be permitted from a final order unless otherwise permitted by statute or rule of court.' *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 514 (1995). An appeal from an order denying post-trial motions is interlocutory. *Id.;* Pa.R.A.P. 301(a), (c), and (d). An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions. *Id.*

However, in *Bonavitacola v. Cluver*, 422 Pa.Super. 556, 619 A.2d 1363 (1993), a panel of this Court allowed an appeal to proceed, despite the fact that there was no judgment entered, in the interest of judicial economy. The reasoning behind this decision was that if the order from which an appeal is taken 'was clearly intended to be a final pronouncement on the matters discussed in the opinion [accompanying the order], ... the appeal is properly before us and ... we have jurisdiction to address the parties' claims. *Bonavitacola, supra.*

As our Court explained in *Bonavitacola*, '[t]he rationale behind treating this appeal as one from an entered judgment is to allow the appeal which is in progress to proceed, economizing judicial resources. Were we to quash an appeal from an order which, except for the entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the prothonotary to enter judgment, and a subsequent appeal would be permitted to follow.' *Id.* at 1367.

Nevertheless, 'the law of this Commonwealth has long recognized that the entry of judgment is a jurisdictional matter. The requirement that the judgment be docketed is jurisdictional. Moreover, the entry of judgment is a prerequisite to our exercise of jurisdiction. On the other hand there are some instances wherein a party has failed to enter judgment and our appellate courts may regard as done that which ought to have been done.' *Johnston, supra* at 514–515.... Pursuant to *Johnston, supra*, we will consider this appeal as being properly before our Court.

*Fanning*, 795 A.2d at 391–92 (citations modified; some citations omitted); *see also Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa.Super.2002) (holding that this Court had jurisdiction to consider the appeal even though no judgment was entered because the interests of judicial economy required Court to regard as done that which ought to have been done.)

Instantly, both ATP and Appleby praeciped for judgment to be entered. The docket is not clear as to whether judgment actually was entered. Pursuant to *Fanning* and *Mackall*, we will "regard as done that which ought to have been done," *Fanning*, 795 A.2d at 392, and conclude that this appeal is properly before this Court.

■ In their first issue, Appellants argue that the trial court erred in granting summary judgment, in part, in favor of ATP and Appleby, and holding that Appellants were not entitled to recover damages for the timber that was removed from their property pursuant to the unrecorded timber contract entered into by the prior owners of the property. Our standard of review from an order granting summary judgment is well-settled. "[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law." *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa.R.C.P. 1035.2(1). When considering a motion for summary judgment, the trial court must consider all of the facts of record and reasonable inferences fairly derived therefrom in the light most favorable to the nonmoving party. *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 195 (2007). The trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and may grant summary judgment only "where the right to such judgment is clear and free from all doubt." *Id.*

> [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.

*Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d 899, 902–03 (2007) (internal citations omitted). To the extent that we must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. *Id.* at 903.

Pursuant to 42 Pa.C.S. § 8311, "a person who cuts or removes the timber of another person without the consent of that person shall be liable to that person in a civil action." Of course, a legally binding contract permitting the removal of timber would constitute consent for purposes of section 8311. Appellants argue that the timber contract here was a contract for the sale of land. As such, Appellants maintain that, to be binding on subsequent bona fide purchasers, the contract must be considered a deed that must be recorded. Be-

cause the timber contract between ATP and the Browns was never recorded, Appellants argue that they did not have notice of the contract. As subsequent bona fide purchasers, Appellants maintain that they cannot be bound by the unrecorded timber contract. Appellants claim that Appleby's timber removal was deliberate and was without permission, resulting in $25,655.33 in damages.

Resolution of this question hinges upon whether the timber contract in this case was a contract for the sale of land or a contract for the sale of goods. As a general matter, Appellants are correct that timber contracts may constitute sales for interests in land. Pursuant to 21 P.S. § 521:

> It shall be lawful for the owner or owners of land, timber or bark, or for any person or persons having an interest therein, to grant, bargain and sell, or contract to sell, by deed, conveyance or contract in writing, signed by the grantor or grantors therein, and proved or acknowledged by them, as now required by law of this commonwealth for the signing and acknowledging of deeds, all or any right, title, claim or interest such grantor or grantors may have in or to any standing or growing timber, or the bark thereon, upon any lands in this commonwealth; **and any such deed, conveyance or contract shall be taken and deemed as a deed, conveyance or contract conveying and vesting an interest in land.**

21 P.S. § 521. When a timber contract constitutes a contract for the sale of land, that contract, once recorded, serves as notice to a subsequent bona fide purchaser. 21 P.S. § 522.

However, section 521, enacted in 1895, is bookended by *McLintock's Appeal*, 71 Pa. 365 (1872), and *Havens v. Pearson*, 334 Pa. 570, 6 A.2d 84 (1939). In both of these cases, the Pennsylvania Supreme Court

recognized that, despite the general categorization of 21 P.S. § 521, not all timber contracts constitute contracts for the sale of land.

In *McLintock's Appeal,* John Strawbridge conveyed 130 acres of land to Lafayette McClintock, but reserved "all the pine and hemlock timber, also the mineral that may be found on said premises, to his own use and advantage." 71 Pa. at 366. The reservation further provided that, in the event that McClintock wanted to "clear any part of the land," Strawbridge was to remove the timber within thirty days after being notified of McClintock's intentions. *Id.* Upon Strawbridge's death, McClintock was named as the administrator of Strawbridge's estate. During inventory of the estate, a question arose as to whether the timber reserved on the property now owned by McClintock constituted personal property of the estate. An auditor was appointed, and he determined that the timber was personal property. The Orphans' Court agreed with the auditor. *Id.* at 365–66.

Our Supreme Court affirmed the Orphans' Court, holding that "[i]n agreements for the reservation or sale of growing timber, whether the timber is to be regarded as personal property or an interest in real estate, depends on the nature of the contract and the intent of the parties." *Id.* at 366. The Court explained the basis for its rule as follows:

> If the agreement does not contemplate the immediate severance of the timber it is a contract for the sale or reservation of an interest in land, and until actual severance the timber in such cases passes to the heir, and not to the personal representative. But when the agreement is made with a view to the immediate severance of the timber from the soil, it is regarded as personal property, and passes to the executor and administrator, not the heir.
>
> *  *  *
>
> But in the case at hand it is manifest that the parties intended by their contract to divide the pine and hemlock from the freehold, and give to it the quality of a chattel. It was not to be taken off at discretion, as to the time. By the express terms of the deed the vendee of the land had the right to require the removal on giving, and the vendor was bound to take it off on receiving thirty days' notice. The timber must, therefore, be regarded as a chattel, which passed to the administrator.
>
> *  *  *
>
> If the reservation had been of a perpetual right to enter on the land and cut all the pine and hemlock timber growing thereon, then it would be ... regarded as an interest in land.

*Id.* at 366–67.

Our Supreme Court reaffirmed these legal distinctions in reviewing the nature of the timber removal contracts in *Havens*. In that case, W.H. Pearson owned, by written contract, the timber growing on 1,300 acres of land owned by someone else. The contract provided Pearson twenty years to cut and remove the timber. *Havens*, 6 A.2d at 85. Following a lien and a judgment, the property was purchased through a sheriff's sale by O.S. Havens. Pearson continued to remove timber from the property after Havens took ownership of it. Havens sought an injunction preventing Pearson from continuing to remove the timber. *Id.* at 86. As in the case *sub judice,* the question became whether the timber contract was for the sale of land or of goods. If the contract was for goods, the timber would not have been subject to the lien, judgment, and subsequent sale.

Although the Supreme Court ultimately held that the contract in *Havens* was for a sale of land, permitting Havens to enjoin Pearson from removing the timber, the Court applied the following principles:

Ordinarily a contract for the sale of standing timber to be cut and removed, or one that gives the purchaser discretion as to the time of removal, is a sale of land within the meaning of the Statute of Frauds. Where, however, timber is to be cut and [removed] by the purchaser **within a definite or reasonable time, it becomes a question of the intent of the parties as to whether a sale of realty, the creation of a chattel real, or a sale of personalty was intended.** It has been stated in many of our cases that the contract to be a sale of personalty must intend an 'immediate severance'; it would be more accurate to say that the real test is, considering the nature and extent of the land, the number of feet of merchantable timber and the time given for removal, whether the vendor intended the vendee to have an interest in the standing timber as land, or whether he contemplated a removal within a time reasonably necessary therefor, in which case the vendee would have a chattel interest.

*Id.* at 86 (citations and footnote omitted; emphasis added). To illustrate these principles, the *Havens* Court cited *Robbins v. Farwell*, 193 Pa. 37, 44 A. 260 (1899), which held that a six- to seven-year window to remove timber demonstrated that the parties intended the contract to be one for the sale of personal property, and *Patterson et al. v. Graham et al.*, 164 Pa. 234, 30 A. 247 (1894), in which the Pennsylvania Supreme Court held that a five-year period to remove timber evinced the intent to create a contract for the sale of personal property. However, the Court contrasted those cases with *Wilson v. Irvin*, 1 Pennyp. 203 (Pa.1881), in which the Court held that a nine-year period to remove timber created a contract for the sale of land. *Havens*, 6 A.2d at 86.

While these cases undeniably are of considerable vintage, Appellants have presented no statutory or decisional authorities that modify, abrogate, or otherwise call into question the principles for which those cases stand, other than 21 P.S. § 521, nor have we found any such authority in our own research. To the contrary, Pennsylvania's Uniform Commercial Code ("the Code") generally is in congruence with the principles established by these cases. Relevant to timber removal, the Code provides as follows:

A contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto but not described in subsection (a) or of timber to be cut is a contract for the sale of goods within this division whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance.

13 Pa.C.S. § 2107(b). Thus, the Code generally treats contracts for the sale or removal of timber as contracts for the sale of goods, not as contracts for the sale of land.

However, this section does not require that **all** timber contracts be considered contracts for the sale of goods. Subsection (c) notes that a "contract for sale **may** be executed and recorded as a document transferring an interest in land and shall then constitute notice to third parties of the rights of the buyer under the contract for sale." 13 Pa.C.S. § 2107(c) (emphasis added). Therefore, the Code aligns with the principles espoused in the cases discussed above, and we still must consider

the intent of the parties in order to ascertain the nature of the instant timber contract.

ATP and the Browns entered into a written contract providing for ATP to purchase and remove the timber from the Browns' property that was twelve inches in diameter or larger. The contract provided ATP with twenty-four months to complete the permitted timber removal, which removal had to be performed consistently with all Pennsylvania laws governing such removal. We conclude that these provisions evince an intent by the parties to create a contract for the sale of goods, not land.

Per *McClintock* and *Havens*, the critical term is the time period within which the timber is to be removed. Here, that term was twenty-four months. Once that time period ended, no further timber could be removed from the property. The contract did not create a perpetual right to remove timber. *See McClintock*, 71 Pa. at 366–67. Instead, the contract vested in ATP the right to remove the timber "within a definite or reasonable time." *Havens*, 6 A.2d at 86. The twenty-four month term was not a standing right to enter the land to remove timber upon maturity, but rather a definite period within which to remove the already existing mature timber. As in *Robbins* and *Patterson*, wherein our Supreme Court found timber contracts to be contracts for the sale of goods, we agree with the trial court's conclusion that the timber contract in this case is a contract for the sale of goods. As such, the contract was not subject to any reporting provisions, including 21 P.S. § 522. The failure to record the contract does not exempt Appellants, even as bona fide subsequent purchasers, from the binding terms of the contract. Accordingly, we discern no error of law or abuse of discretion by the trial court in granting ATP and

Appleby's motions for summary judgment on this issue.

■ Appellants next claim that they are entitled to damages that resulted from the removal of the timber, and that the trial court erred in excluding these damages from the jury's consideration. Appellants argue that the trial court prohibited them from presenting evidence regarding the costs of the removal of slash and tree waste, restoration of the property, the value of the property, or the replacement costs associated with the timber removal. Appellants aver that significant value inheres in an old forest and a pristine stream, which now are sullied by slash, cut trees, and logging roads and equipment. Appellants point out that they introduced inspection reports and DEP reports outlining the violations of the various logging laws that were committed by Appleby. Appellants note that they suffered damage to their property in the nature of "a sedimentation trap, alteration of the stream channel, negative impact on top soil, and destabilization of the stream bank and hillside slope, and loss of stabilizing vegetation." Brief for Appellants at 14.

Prior to trial, the trial court limited Appellants' damages to those "arising as a consequence of the failure of Appleby or [ATP] to comply with the relevant terms of the timber contract." Trial Court Opinion ("T.C.O."), 10/14/2010, at 6. The court noted that the only relevant damages provision in that contract was Paragraph 3, which states that ATP/Appleby will "observe all the laws governing the harvesting of timber in the above mentioned state of [Pennsylvania]." *Id.* at 7. Thus, to recover damages, Appellants must have established that ATP or Appleby violated Pennsylvania law in some fashion. Appellants now argue that this limitation prevented them from establishing the damages out-

lined in their complaint and in their argument as described above.

However, Appellants' damages issue is moot. The jury did not find ATP or Appleby liable. Following the trial court's instructions to the jury on both liability and damages, the trial court explained the verdict slip to the jurors. Notes of Testimony—Charge of the Court and Points for Charge ("N.T."), 10/19/2010, at 26–28. The slip contained five questions for the jury's consideration. The first question asked whether the jurors found that "either or both of the defendants, [ATP] or [Appleby,] breached the general agreement providing for the timber harvest on the Brown/Zitney property?" *Id.* at 26. The court instructed the jury that, if it answered "no" to that question, it need not consider or answer the remaining four questions, the last two of which addressed damages. *Id.* at 26–27.

After deliberation, the jury returned a verdict in favor of ATP and Appleby. Specifically, the jury answered "no" to the first question on the verdict slip. Finding no liability by ATP or Appleby, the jury did not consider damages at all. Indeed, the jury was instructed that it need not consider damages if it answered "no" to the first question. Thus, Appellants' claim that the trial court erred in limiting the potential damages in this case is moot. Appellants present no argument to overcome this conclusion. Accordingly, Appellants are not entitled to a new trial on their damages claim.

Appellants next contend that the trial court erred in refusing to instruct the jury on negligence. Appellants maintain that they raised a negligence count in paragraph 35 of their complaint, and that the evidence presented at trial supported the negligence allegation raised in the complaint, and therefore merited a negligence instruction. According to Appellants, the inspections conducted on the property, and the attendant reports, demonstrated that Appleby violated various provisions of Pennsylvania's environmental laws, including the clean water regulations codified at 25 Pa.Code §§ 92 and 102 and the Clean Streams Law, 35 P.S. § 691.401. These violations, which Appellants argue were committed by Appleby when removing the timber, constituted a breach of duty of care, warranting a negligence instruction.

Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. *Gorman v. Costello,* 929 A.2d 1208, 1212 (Pa.Super.2007). As a general proposition, a court should charge the jury only "on the law applicable to the factual parameters of a particular case and it may not instruct the jury on inapplicable legal issues." *Cruz v. N'eastern Hosp.,* 801 A.2d 602, 611 (Pa.Super.2002).

Although Appellants did not specifically identify negligence as an enumerated cause of action in their complaint, they maintain nonetheless that paragraph 35 of that complaint fairly raised a negligence allegation. It is not necessary that a plaintiff identify the specific legal theory underlying the complaint. *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973, 980 (1985); *Weiss v. Equibank,* 313 Pa.Super. 446, 460 A.2d 271, 275 (1983). Yet, pursuant to Pa.R.C.P. 1019(a), a complaint must not only apprise the defendant of the claim being asserted, but must also summarize the essential facts to support the claim. *Dickerson v. Brind Truck Leasing,* 362 Pa.Super. 341, 524 A.2d 908, 910 (1987); *Burnside,* 505 A.2d at 980; *Weiss,* 460 A.2d at 274–75; *Alpha Tau Omega Fraternity v. University of Pennsylvania,* 318 Pa.Super. 293, 464 A.2d 1349, 1352 (1983). If a plaintiff fails

properly to plead a separate cause of action, the cause he did not plead is waived. *Garcia v. Community Legal Services Corp.,* 362 Pa.Super. 484, 524 A.2d 980, 982 (1987). We recognize that the Rules of Civil Procedure are to be interpreted liberally. *See* Pa.R.C.P. 126. "However, liberal construction does not entail total disregard of those rules concerning pleading." *Duquesne Light Co. v. U.S. Indus. Fabricators,* 334 Pa.Super. 444, 483 A.2d 534, 536 (1984).

Paragraph 35 reads, *in toto,* as follows: 35. The Defendants, [ATP and Appleby], caused the removal of valuable trees, timber and logs from real property, and thereby destroyed the topography and surface of the land by:

(a) Disrupting the top soil by building or otherwise constructing various roads and entrance ways to the real property;

(b) Conducting various logging and timbering practices, including but not limited to the dragging of various logs and operation of various pieces of large machinery that negatively impacted the top soil by disfiguring and disrupting it and otherwise altering and changing its natural landscape [and] esthetic qualities;

(c) Loss of tree production due to logging and timbering operations, logging roads, debris, tree tops and other branches created by the logging and timber operations;

(d) Permanent and irreparable damages to the [Appellants'] real property, as a result of cutting and removing trees, timber and logs, destroying new trees and undergrowth in a manner that is totally and thoroughly inconsistent with the proper techniques for cutting trees and removing trees,

timber and logs in order to insure continuous growing and propagation of the forest; and

(e) Disturbing and otherwise impairing the integrity of a natural stream on the premises by creating a sediment trap, altering the stream channel, destroying aquatic life, and failing to prevent unnatural run-off into the stream itself.

Complaint, 10/02/2002, ¶ 35. Nowhere in the language of this paragraph did Appellants allege that Appleby breached a duty of care, that the breach caused injury, or that damages resulted. Appellants did not set forth any negligence terminology or any facts sufficient to aver a negligence cause of action. This paragraph amounts to nothing more than a list of damages allegedly caused by Appleby. In paragraph 36, Appellants alleged that the conduct described in paragraph 35 was "wanton, outrageous, deliberate and intentional." *Id.* at ¶ 36. Again, Appellants never claimed that the conduct was negligent, nor did Appellants use any terminology to support a finding that what Appellants intended was a negligence cause of action. Even employing the most liberal reading of Appellants' pleading, we struggle and ultimately fail to decipher or discern a cause of action for negligence from the facts pleaded in the complaint. We are constrained to find any cause of action for negligence to be waived, and, therefore, agree with the trial court that a negligence jury instruction was inappropriate. *Garcia, supra.*

■ Nevertheless, assuming, *arguendo,* that paragraph 35 sufficiently pled a cause of action for negligence, Appellants still would not be entitled to relief. Paragraph 35 amounts to a list of damages caused by the timber removal. Presently, Appellants argue that those damages were the

result of Appleby's violations of various environmental laws. Appellants argue that the violation of these laws constituted negligence, essentially presenting a negligence *per se* argument. However, the trial court properly instructed the jury on those laws in the context of the damages provision in the contract. N.T.—Charge of the Court and Points for Charge, 10/19/2010, at 14–21. Having been apprised of the laws allegedly violated by Appleby, the jury nonetheless declined to find either ATP or Appleby liable to Appellants. To the extent that the failure to provide a negligence instruction was error, it was harmless. *See Keck v. Doughman,* 392 Pa.Super. 127, 572 A.2d 724, 729 (1990) (failure to provide warranted instruction harmless where plaintiff would not have recovered even with the instruction.) Hence, Appellants are not entitled to a new trial.

■ Appellants next argue that they were entitled to a jury instruction and damages based upon a reduction in the special value of the property. The trial court denied Appellants' request for such an instruction. Appellants contend that there is "special value" in having an old growth forest and a pristine stream that they can use and enjoy. Brief for Appellants at 18.

Appellants' argument on this point encompasses only one page. Aside from the standard jury instruction that they proposed to the trial court, and the standard of review, Appellants present no legal authority in support of their claim that the instruction was warranted under the circumstances of this case. Appellants cite no cases illustrating when, and under what circumstances, the special value instruction should be given, or any cases in which this Court has approved the issuance of such an instruction. Appellants claim baldly that they were entitled to the instruction and that the trial court's failure to provide it was an abuse of discretion. Without legal support, this undeveloped claim is waived. *See Fletcher–Harlee Corp. v. Szymanski,* 936 A.2d 87, 103 (Pa.Super.2007) (deeming a claim that is undeveloped and unsupported by relevant authority to be waived); Pa.R.A.P. 2119(a).

■ Appellants advance their last two issues in a single argument. Appellants contend that they were entitled to JNOV because the evidence presented at trial demonstrated clearly that Appleby violated the laws of the Commonwealth, thereby breaching the contract. Specifically, Appellants maintain that Marilyn Dugan's testimony, which was based upon her five inspections of the property and five attendant reports, established Appleby's violations of the Clean Streams Law[3] and

3. The portion of the Clean Streams Law relevant to this case provides:

It shall be unlawful for any person or municipality to put or place into any of the waters of the Commonwealth, or allow or permit to be discharged from property owned or occupied by such person or municipality into any of the waters of the Commonwealth, any substance of any kind or character resulting in pollution as herein defined. Any such discharge is hereby declared to be a nuisance.
35 P.S. § 691.401. "Pollution" is defined as the:

contamination of any waters of the Commonwealth such as will create or is likely to create a nuisance or to render such waters harmful, detrimental or injurious to public health, safety or welfare, or to domestic, municipal, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life, including but not limited to such contamination by alteration of the physical, chemical or biological properties of such waters, or change in temperature, taste, color or odor thereof, or the discharge of any liquid, gaseous,

various portions of the erosion and sediment control regulation codified at 25 Pa. Code § 102.4.[4] Appellants argue that neither ATP nor Appleby presented any evidence or testimony to contradict Ms. Dugan's testimony.

In reviewing a trial court's decision denying a request for JNOV, "[our] standard of review ... is the same as that for a trial court." *Ferry v. Fisher,* 709 A.2d 399, 402 (Pa.Super.1998).

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Wilson v. Transp. Ins. Co.,* 889 A.2d 563, 569 (Pa.Super.2005) (citations omitted). "We will reverse a trial court's grant or denial of a [JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case." *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa.Super.1999).

Applying this standard of review, and viewing the evidence in the light most favorable to ATP and Appleby as verdict winners, we discern no abuse of discretion or controlling error of law by the trial court. Appellants rely almost exclusively upon Ms. Dugan's testimony in arguing that JNOV was warranted. However, Ms. Dugan's testimony regarding the alleged violations of the pertinent clean water laws was rejected by the jury. We may not reweigh this evidence or substitute our judgment for that of the jury. Indeed, our standard of review requires us to reject this testimony and any inferences derived therefrom. *Wilson, supra.*

Appleby testified that he performed his duties in compliance with state law (and that he would have continued to do so) before he was thrown off the property by Appellants. He testified that, had he retained proper access, he would have completed the timber removal and performed any necessary remediation consistent with state law, including seeding and mulching any areas destroyed by the equipment. Appleby also testified that he did not believe that he needed an erosion and sediment plan because of the small size of the property. While Ms. Dugan testified that Appleby did not have such a plan, she never actually measured the property to

---

radioactive, solid or other substances into such waters.
35 P.S. § 691.1.

**4.** This provision of the Pennsylvania Administrative Code governs erosion and sediment control. 25 Pa.Code § 102.4. Appellants

maintain that ATP and Appleby violated this regulation by failing to have an erosion and sediment control plan, by failing to have such a plan on site, and by failing to implement the best management practices in place to control erosion. Brief for Appellants at 19.

determine whether such a plan was actually required by law. Appleby further testified that, while there was a bed for a small stream located on the property, at the time of the timber removal, there was no water in the stream because of a particularly dry summer. Moreover, when given the chance, Appleby returned to the property to perform the remedial work requested by Appellants in order to stabilize the property. Finally, despite the alleged violations that she discovered, Ms. Dugan admitted that the property had healed itself and that she did not recommend that the DEP or any other agency take corrective or punitive measures against either ATP or Appleby.

There was sufficient evidence for the jury to conclude that neither ATP nor Appleby breached their contract with the Browns, and, subsequently, with Appellants. Although this evidence is not overwhelming, we are bound only to determine whether **any** basis exists to support the verdict. *Id.* Appellants have not demonstrated that the evidence, viewed in ATP and Appleby's favor, entitles them to a judgment as a matter of law or that reasonable minds could not disagree as to the proper verdict. Consequently, we must affirm the trial court.

Order affirmed. Jurisdiction relinquished.