J-A26011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHARON C. WILSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TERRI LEVINE, THE COACHING INSTITUTE AND COMPREHENSIVE COACHING U, INC., | |
| Appellants | No. 1896 WDA 2017 |

Appeal from the Judgment Entered January 23, 2018
In the Court of Common Pleas of Butler County
Civil Division at No(s): A.D. No. 2006-10892

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED JANUARY 30, 2019**

Appellants, Terri Levine, the Coaching Institute ("CI"), and Comprehensive Coaching U, Inc. ("CCU"), appeal from the judgment entered in favor of Appellee, Sharon C. Wilson, in the amount of $94,866.77. We affirm.

The trial court summarized the factual background and procedural history of this case as follows:

> This case arises out of [Wilson's] Complaint filed on or about December 4, 2006, alleging monetary damages as a result of a failed life coaching business venture between Wilson and Levine, though it is noted that the parties to said business venture were contested throughout the underlying proceedings up until, and including at[,] the time of trial.
>
> Wilson and Levine began their work together in or about 1999, on an unrelated business venture, when they launched Explode Your Business and Income. At that time, the women agreed to an equal

fifty percent (50%) split of net income, with each being responsible for fifty (50%) of the expenses. Eventually, Explode Your Business and Income reached a natural end. Throughout this time, both Wilson and Levine maintained their separate online life coaching businesses.

Wilson and Levine entered into the business venture that is the subject of the underlying litigation, in or around December[] 2004, when they began operations to launch [CI] where they would use each of their independently developed approaches to teach their clients how to become successful life coaches. At that time, Wilson and Levine agreed to a fifty percent (50%) monthly split of the net income derived from CI. Payments in this regard were made from Levine's wholly owned corporation, [CCU], to Wilson's wholly owned limited liability corporation, Coaching From Spirit, LLC [("CFS")]. Yearly, Wilson received a 1099.

The parties operated in this manner through September[] 2005, when Levine notified Wilson that she would be adjusting the parties['] profit splitting structure such that Wilson would receive thirty percent (30%) of the monthly net income generated from CI, and Levine would receive seventy percent (70%) of the monthly net income generated from CI.

In conveying this change in compensation to Wilson, Levine made it clear that if Wilson did not accept the adjustment in compensation, Levine would terminate Wilson's services. Although Wilson disagreed with the adjustment, and tried a number of times to change Levine's mind on the subject, even suggesting that the agreement between the parties be memorialized in writing, Wilson accepted Levine's terms moving forward. The business operated at a thirty-seventy (30-70) monthly split of net income from October 1, 2005[] through June 14, 2006.

It was in June[] 2006, that Levine sent an electronic communication to the CI staff indicating that Wilson was terminated such that she was no longer a part of CI, and as a result, should not be permitted access to any of the materials or clients associated with CI.

As a result, [Wilson] commenced this action on or about June 16, 2006, by filing a Praecipe for Writ of Summons. Subsequently, [Wilson's] Complaint was amended three times, resulting in this matter proceeding under [Wilson's] Third Amended [C]omplaint, filed on or about May 11, 2009.

The remaining pre-trial procedural history from 2009 to the present is voluminous, and generally inessential to the issues raised by Appellants in this appeal, other than to note that upon this [c]ourt's consideration and denial of Appellants' Motion for Summary Judgment, this matter proceeded to a [j]ury [t]rial from July 17, 2017[] through July 21, 2017, resulting in a [v]erdict in favor of [Wilson] in the amount of Eighty Two Thousand Two Hundred and Fifty-Eight Dollar and Sixty-Six Cents ($82,258.66).

Subsequently, [Wilson] filed a Post-Trial Motion to Mold Verdict to Include Pre-Verdict Interest, and Appellants filed a Motion for Post-Trial Relief, requesting that this [c]ourt [s]et aside the [j]ury [v]erdict in favor o[f] [Wilson].  Having heard argument on said [m]otions on November 28, 2017, this [c]ourt granted [Wilson's] Post-Trial Motion to Mold Verdict to Include Pre-Verdict Interest, and denied Appellants' Motion for Post-Trial Relief.[1]

Appellants subsequently filed a Notice of Appeal on or about December 22, 2017, with respect to the [o]rder of [c]ourt under date of November 28, 2017, denying Appellants' Motion for Post-Trial Relief.

Upon receipt of said Notice of Appeal, on or about December 27, 2017, in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, this [c]ourt entered an [o]rder of [c]ourt wherein … Appellants were directed to file of record and serve upon the undersigned trial judge a [Rule 1925(b)] Concise Statement of the Matters Complained of on Appeal no later than twenty-one (21) days from the date of the [o]rder of [c]ourt.

On or about January 12, 2018, … Appellants … filed their Concise Statement of Matters [C]omplain[ed] of on Appeal, pursuant to … Rule 1925(b).

Trial Court Opinion ("TCO"), 1/29/2018, at 1-4 (unnecessary emphasis omitted).

Subsequently, because Appellants had appealed from the trial court's order denying their post-trial motions, this Court issued an order on January

_____

[1] After the trial court molded the verdict to include pre-verdict interest, Wilson's award amounted to a total of $94,866.77.

- 3 -

16, 2018, directing Appellants to praecipe the trial court's prothonotary to enter judgment on the trial court's decision. *See Zitney v. Appalachian Timber Products, Inc.*, 72 A.3d 281, 285 (Pa. Super. 2013) ("An appeal from an order denying post-trial motions is interlocutory. An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions.") (citations omitted). Appellants complied with our instruction, and judgment was entered on January 23, 2018. We therefore consider this appeal as taken from the January 23, 2018 entry of judgment. *See id.* ("[T]here are some instances wherein a party has failed to enter judgment and our appellate courts may regard as done that which ought to have been done.") (internal quotation marks and citations omitted).

Presently, Appellants raise the following issues for our review:

A. Was it an error of law for the jury to render a verdict for [Wilson] and against [CCU] under a theory of unjust enrichment, where Wilson provided services pursuant to an express contractual agreement (the "Agreement") and received all compensation to which she was entitled under that Agreement?

B. Was it an error of law for the jury to render a verdict in favor of Wilson and against CCU without making a finding regarding the parties to the Agreement, as an unjust enrichment claim would be precluded by (i) a finding that Wilson was in privity with CCU, and/or (ii) a finding that Wilson's company, [CFS], … provided Wilson's services instead of Wilson directly?

C. Assuming that the parties to the Agreement were Wilson and [Levine], was it an error of law for the jury to render a verdict in favor of Wilson and against CCU for unjust enrichment in the absence of evidence that CCU misled Wilson into providing services by promising compensation in excess of the compensation that Levine was willing to provide?

- 4 -

D. Is Wilson estopped as a matter of law from seeking to recover fifty percent (50%) of the net income from [CI's] program for the period October 1, 2005 through June 14, 2006, where, *inter alia*, (i) Wilson expressly stated that she would accept 30 percent of net revenues and did so without protest for eight months, and (ii) CCU detrimentally and reasonably relied on Wilson's agreement to accept thirty percent (30%) of CI's net income by continuing to engage Wilson's services, and CCU expressly communicated to Wilson that it would have terminated her services absent such agreement?

E. Did Wilson, as a matter of law, waive any right to recover fifty percent (50%) of CI's net income after October 1, 2005[,] by, *inter alia*, expressly communicating to Levine that she was willing to provide services to CI for thirty percent (30%) of net income, acknowledging that agreement multiple times in writing, and performing in accordance with those terms from October 1, 2005 through June 14, 2006[,] without protest?

F. Was CCU entitled to judgment notwithstanding the verdict on Wilson's unjust enrichment claim, where the evidence unequivocally established, *inter alia*, (i) that Levine took full managerial control of CI after October 1, 2005, while Wilson focused primarily on sales and fulfillment, and (ii) Levine developed successful marketing initiatives and reduced CI's operating expenses, such that Wilson's average monthly compensation increased by more than $3,700 during the period October 1, 2005 through June 14, 2006 in exchange for a reduced level of services?

G. Whether the [t]rial [c]ourt erred in:

1. Denying [Appellants'] Motion for Summary Judgment, supported by their Brief in Support of Motion for Summary Judgment and Reply in Further Support of [Appellants'] Motion for Summary Judgment;

2. Denying [Appellants'] Motion in Limine to Preclude Damages Claim for Fifty-Percent of Net Income;

3. Denying [Appellant's] Motion in Limine to Preclude All Claims by Sharon C. Wilson in Her Individual Capacity and Against Terri Levine in Her Individual Capacity;

4. Rejecting [Appellants'] Proposed Jury Verdict Slip;

5. Modifying [Appellants'] Proposed Points for Charge;

6. Overruling [Appellants'] objections to [Wilson's] Proposed Jury Instructions, including without limitation [Wilson's] proposed Jury Instructions Nos. 18, 22[,] and 23;

7. Denying [Appellants'] Motion for Directed Verdict; and

8. Denying [Appellants'] Motion for Post-Trial Relief?

Appellants' Brief at 7-11.

At the outset, we observe that Appellants raise seven issues, including one with eight subparts, in their statement of questions involved.[2] Appellants, however, do not divide their brief into corresponding parts.[3] Consequently, we admonish Appellants for their lack of compliance with Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). **See also Donaldson v. Davidson Bros., Inc.**, 144 A.3d 93, 99 n.9 (Pa. Super. 2016) (determining that the appellant failed to comply with Rule 2119(a) where the appellant's brief did not "present and develop eight arguments in support of the eight questions raised").

_____

[2] We remind Appellants that "[t]he effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them." **See Commonwealth v. Snyder**, 870 A.2d 336, 340 (Pa. Super. 2005) (citations omitted).

[3] Namely, Appellants do not present an argument section for their last question and its various subparts, set forth *supra*.

Because Appellants advance seven discernible issues with accompanying analysis in their argument section, we limit our review to those claims.[4], [5] In their first issue, Appellants contend that "Wilson's unjust enrichment claim must fail as a matter of law because she has received all of the compensation to which she was contractually entitled." Appellant's Brief at 41 (unnecessary capitalization and emphasis omitted). They argue:

> Wilson testified repeatedly and unequivocally that she provided services to CI pursuant to an express oral agreement, first entered into in 1999, to collaborate with Levine on marketing programs and split the net revenues equally (the "Agreement"). Wilson contended that the Agreement was a partnership, which could not be modified without her consent, while Levine asserted that Wilson was an independent contractor, and that the Agreement

---

[4] We deem all other issues raised in Appellants' statement of questions involved — including any subparts of questions — waived to the extent they do not overlap with the seven main arguments presented and developed by Appellants in their argument section. *See PHH Mortg. Corp v. Powell*, 100 A.3d 611, 615 (Pa. Super. 2014) ("Because the 'Argument' section of the Powells' appellate brief sufficiently identifies two issues and provides legal argument in support of them, however, we will address these two issues herein. The other nine issues set forth in the 'Statement of Questions Involved' are waived, as the above-referenced failures to comply with our appellate rules preclude our ability to conduct meaningful appellate review of these issues.").

[5] We also note that the trial court's Pa.R.A.P. 1925(a) opinion does not specifically address each of the numerous issues raised in Appellants' Rule 1925(b) statement. Nevertheless, we are able to glean from the trial court's opinion its reasons for denying Appellants relief. *See Cordes v. Associates of Internal Medicine*, 87 A.3d 829, 833 n.1 (Pa. Super. 2014) ("[W]e have what we need to review the merits of [the a]ppellant's issues."); *Commonwealth v. Hood*, 872 A.2d 175, 178 (Pa. Super. 2005) (proceeding to the merits of the appellant's claims where this Court was adequately apprised of the trial court's reasoning in relation to the issues raised on appeal, despite the lack of a Rule 1925(a) opinion).

could be modified or terminated at will. The jury found that the Agreement was not a partnership, and that Levine did not breach the Agreement by modifying Wilson's compensation.[6] Moreover, Wilson testified that CCU fully complied with the modified agreement by paying CFS 50 percent of net revenues from CI through September 2005 and 30 percent of net revenues from CI from October 2005 through May 2006.

Since Wilson received all of the compensation to which she was entitled pursuant to the Agreement, it was error for the jury to award Wilson additional compensation under a quasi-contractual theory of unjust enrichment.

Appellants' Brief at 41-42 (internal citations omitted). Thus, Appellants maintain that "[t]he express Agreement governing Wilson's services to CI defines the compensation to which she is entitled, and she cannot circumvent that Agreement by implying a different contract with CCU." *Id.* at 42.

We apply the following standard of review:

[T]he standard of review for an order granting or denying [JNOV] is whether there was sufficient competent evidence to sustain the verdict. We must view the evidence in the light most favorable to the verdict winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. Furthermore, [JNOV] should be entered only in a clear case, where the evidence is such that no reasonable minds could disagree that the moving party is entitled to relief. Review of the denial of [JNOV] has two parts, one factual and one legal:

Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight

_____

[6] We consider this assertion somewhat misleading. Despite Appellants' contention, the jury did not find that Levine did not breach any agreement by modifying Wilson's compensation. As the jury found that there was no partnership agreement to begin with, it never reached the question of breach. *See* Wilson's Brief at 3 ("The jury did not find that there was a partnership agreement. The jury certainly did not go further to find that Levine **did not** breach the partnership agreement by modifying Wilson's compensation.") (emphasis in original).

accorded evidence at trial, we will not substitute our judgment for that of the finder of fact.

***Underwood ex rel. Underwood v. Wind***, 954 A.2d 1199, 1206 (Pa. Super. 2008) (citation omitted).

We further observe that "[t]he doctrine of unjust enrichment is clearly inapplicable when the relationship between the parties is founded on a written agreement or express contract." ***Roman Mosaic & Tile Co., Inc. v. Vollrath***, 313 A.2d 305, 307 (Pa. Super. 1973) (citations and internal quotation mark omitted).[7] Instead,

> [a] claim for unjust enrichment arises from a quasi-contract. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another.
>
> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on

---

[7] We note that, "claims [for] breach of contract may be pleaded alternatively with a claim of unjust enrichment, although recovery may not be had for both unjust enrichment and the other claims." ***Lugo v. Farmers Pride, Inc.***, 967 A.2d 963, 970 (Pa. Super. 2009) (citations omitted); ***see also*** Wilson's Brief at 2.

the intention of the parties, but rather the most critical element of this equitable doctrine, which is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Gutteridge v. J3 Energy Group, Inc.*, 165 A.3d 908, 916-17 (Pa. Super. 2017) (internal citations and quotation marks omitted).

No relief is due on this basis. The jury did not find that any express contract existed between any of the parties and, consequently, Wilson could not have received all of the compensation to which she was contractually entitled. Indeed, at trial, Wilson argued before the jury, "if you find that there wasn't an agreement between these ladies individually then alternatively we are asking that you find that [Wilson] unjustly enriched [CCU]…." N.T. Trial, 7/21/2017, at 68. The jury did so, and its verdict reflects that it found no express contract present in this case. Specifically, the jury explicitly found that no partnership agreement existed and, by way of its unjust enrichment verdict, it implicitly rejected Appellants' contention that Wilson agreed to serve as an independent contractor whose compensation could be modified at Levine's will.[8] We will not substitute our judgment for that of the finder of fact. *See Underwood*, *supra*. Accordingly, we reject Appellants' first claim.

_____

[8] In Appellants' reply brief, they contend that "[b]y rejecting Wilson's claim that the Agreement was a partnership, the jury necessarily found that the Agreement was terminable at-will and denied Wilson any recovery for breach of contract." Appellants' Reply Brief at 6-7. We disagree. If that were the case, the jury would not have rendered an unjust enrichment verdict, finding that it would be inequitable for CCU to retain the value of the benefit bestowed on it by Wilson. Thus, it seems more likely that the jury determined that

- 10 -

Second, Appellants claim that "Wilson could not assert an unjust enrichment claim against CCU if she was in contractual privity with CCU." Appellants' Brief at 43 (unnecessary capitalization and emphasis omitted). They argue that, "[i]f Wilson contracted with CCU, the existence of that contract bars Wilson from asserting a claim against CCU for unjust enrichment." *Id.* at 43-44 (footnote omitted). The jury, however, did not find that Wilson was in contractual privity with CCU, as discussed *supra*. Once again, we will not substitute our judgment for that of the factfinder. *See Underwood*, *supra*. Consequently, we also reject this claim.

Third, Appellants state that "[i]f the agreement was between Wilson and Levine, Wilson's unjust enrichment claim must fail as a matter of law because there is no evidence that CCU misled Wilson into providing services." Appellants' Brief at 45 (unnecessary capitalization and emphasis omitted). They insist that, "even if Wilson were entitled to pursue extra-contractual compensation from CCU under a theory of unjust enrichment, Pennsylvania law would require Wilson to prove that CCU misled her into providing services in order to prevail on an unjust enrichment claim." *Id.* at 46 (citations omitted).

---

"Wilson and Levine or Wilson and CCU [never] reached a meeting of the minds. Again, Wilson believed she was an equal 50/50 partner in [CI] and Levine believed she owned [CI] and that Wilson was an independent contractor whose terms could be modified at any time by Levine without consequence." Wilson's Brief at 5-6. In other words, no agreement was reached. Further, we note that the verdict slip did not ask the jury to determine explicitly if any express contract other than a partnership agreement existed between any of the parties.

The Pennsylvania law on which Appellants rely to support their argument explains that:

> The Restatement of Restitution sets forth various rules for the determination of whether the retention of a particular enrichment is unjust. **Section 110 deals with the situation where a third party benefits from a contract entered into between two other parties. It provides that, in the absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party.** The Restatement gives as an example of this principle the situation where A purchases a ring from C, a jeweler, for his fiancée B and then defaults in the payments. The Restatement states that C cannot recover the ring or its value from B. (Footnote omitted)

***Kemp v. Majestic Amusement Co.***, 234 A.2d 846, 848 (Pa. 1967) (emphasis added). In order for this principle to apply, however, a contract must have been entered into between two parties. Thus, in the case *sub judice*, before evidence of CCU's misleading actions (or lack thereof) becomes relevant, a contract between Levine and Wilson is required. The jury, though, did not make a finding that an express contract existed between Levine and Wilson. We reiterate that this Court will not substitute our judgment for that of the factfinder. ***See Underwood, supra***. Accordingly, we conclude that this argument has no merit.

Fourth, Appellants claim that "[i]t was error for the jury to render an unjust enrichment verdict against CCU without making a finding regarding the parties to the agreement." Appellants' Brief at 53 (unnecessary capitalization and emphasis omitted). They argue:

> The [v]erdict [s]lip devised by the trial court did not require a finding regarding the parties to the Agreement by which Wilson

provided services to CI. If the jury found in response to Question 1 that there was a partnership agreement, the jury was directed to proceed to Question 5, which simply asked whether CCU was unjustly enriched by Wilson.

Question 2 asked the jury to find whether the parties to the Agreement were (i) Wilson and Levine, or (ii) CFS and CCU. However, because the jury found in response to Question 1 that there was no partnership agreement, it did not answer Question 2. Moreover, even if the jury answered Question 2 and found that the parties were CFS and CCU, they would have been directed to proceed to Question 5 despite the existence of a direct contractual relationship with CCU governing Wilson's services.

The absence of a finding regarding the parties to the Agreement requires reversal. If CCU was a party to the Agreement to provide Wilson's services, any claim for compensation must be brought as a claim for breach of contract. Since the jury found that the Agreement was not breached, any such claim would fail.[9] Finally, any finding that CFS was a party to the Agreement would preclude a claim for compensation, since it was CFS — not Wilson — who provided the services, and CFS is not a plaintiff.

Appellants' Brief at 53-54.

We deem this claim waived. Our review of the record does not indicate that Appellants objected to the trial court's verdict slip on this basis. Specifically, it does not appear to us that Appellants objected because the trial court's verdict slip did not ask the jury to render a finding regarding the parties to any agreement by which Wilson provided services to CI. *See* N.T. Trial, 7/20/2017, at 133-34, 150-51. Moreover, Appellants do not pinpoint in their brief where they objected to this particular aspect of the trial court's verdict slip either. Instead, Appellants identify that they generally objected to the verdict slip's being drafted in the alternative with respect to Wilson's contract

---

[9] We reiterate that the jury did not explicitly find that the Agreement was not breached. *See* footnote 6, *supra.*

- 13 -

and unjust enrichment claims, which is a separate issue from requiring the jury to determine who the parties were to any agreement. *See* Appellants' Brief at 36 (citing N.T. Trial, 7/20/2017, at 133-34); *see also* Appellants' Supplemental Statement Regarding the Preservation of Issues for Appeal, 11/16/2018, at 1 (listing "the many places in the record where Appellants objected to [Wilson's] simultaneously pursuing the same compensation under theories of breach of contract and unjust enrichment").[10] Thus, Appellants have not preserved this issue for our review. *See Stapas v. Giant Eagle, Inc.*, -- A.3d --, 2018 WL 6070787, at *7 (Pa. filed Nov. 21, 2018) ("[P]ost-trial relief cannot be granted if the basis for the post-trial motion related to a verdict arose during the trial proceedings and the party seeking relief did not raise a contemporaneous objection.") (citations omitted).

Nevertheless, even if not waived, Wilson persuasively argues that "[t]he jury did not have to find any agreement to render a verdict. It was able to render a verdict despite finding that there was no agreement between any of the parties." Wilson's Brief at 6; *see also Gutteridge*, *supra* ("[A] claim for unjust enrichment arises from a quasi-contract. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another."). Wilson claims that "[t]he jury simply

---

[10] Likewise, Appellants did not object to the trial court's verdict slip on the basis that it did not ask if any express contract — aside from the partnership agreement — existed in the matter.

- 14 -

did not believe that Wilson and Levine or Wilson and CCU ever reached a meeting of the minds. Again, Wilson believed she was an equal 50/50 partner in [CI,] and Levine believed she owned [CI] and that Wilson was an independent contractor whose terms could be modified at any time by Levine without consequence." Wilson's Brief at 5-6. Accordingly, Appellants would not have convinced us that a finding of the parties to any agreement was required, as the jury seemingly determined that there was no express agreement in the first place.

Fifth, Appellants advance that, "[a]s a matter of law, Wilson is estopped from recovering 50% of the net revenues of CI after October 1, 2005." Appellants' Brief at 54 (unnecessary emphasis and capitalization omitted). Appellants claim that, "[i]f the Court determines that Wilson was permitted to seek compensation for her services beyond that specified by the Agreement, she was estopped from doing so as a matter of law because (i) Wilson misled Levine into believing that she would accept 30 percent of CI's net revenues for her services, and (ii) Levine detrimentally relied upon Wilson's statements by continuing to engage her services, rather than terminating their relationship, as Levine was entitled to do." *Id.*

> Our Supreme Court has stated:
>
> Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.

- 15 -

***Kreutzer v. Monterey County Herald Co.***, 747 A.2d 358, 361 (Pa. 2000) (citation omitted).

We acknowledge that "[w]hether equitable estoppel exists in a given case is a question of law for the court to decide. When reviewing questions of law, the trial court's conclusions of law are not binding on this [C]ourt, whose duty is to determine whether there was a proper application of the law to the facts by the trial court." ***Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.***, 685 A.2d 1019, 1023-24 (Pa. Super. 1996) (citations and footnote omitted); ***see also Nesbitt v. Erie Coach Co.***, 204 A.2d 473, 477 (Pa. 1964) ("It is for the jury to say whether alleged remarks were made, but it is for the court to decide whether they are susceptible of the inferences attributed to them. That statements should give rise to an estoppel they must be clear and reasonably certain in their intendment.") (citations and internal quotation marks omitted). Equitable estoppel may be applied,

> where the party asserting estoppel established by clear, precise and unequivocal evidence (1) that the party against whom the doctrine is sought to be asserted intentionally or negligently misrepresented a material fact, knowing or with reason to know that the other party would justifiably rely on the misrepresentation, (2) that the other party acted to his or her detriment by justifiably relying on the misrepresentation, and (3) that there was no duty of inquiry on the party seeking to assert estoppel. The doctrine is one of "fundamental fairness" and its application will depend on the facts in each case.

***Stonehedge***, 685 A.2d at 1024 (citations omitted).

We determine that equitable estoppel does not apply here. Appellants claim that "Wilson's words and conduct both induced Levine to believe that Wilson would accept 30[%] of the net revenues of CI in exchange for her services." Appellants' Brief at 57. However, as the trial court ascertained, "it seems that Wilson made it very clear that she objected to the new terms of payment. Likewise, it also appears to this [c]ourt that given Levine's ultimatum that Wilson either accept the payment adjustment at [30%] of monthly net income, or Wilson would be shut out of CI, Wilson had no viable other option than to 'accept,' the [30%] of monthly net income as her new terms of payment." TCO at 8. We agree.

Indeed, Appellants concede that, on the day Levine informed Wilson of the new arrangement, Wilson "wrote two e-mails to Levine…, trying to convince Levine to 'maintain the agreement that we had since Explode' and continue to operate under a 50/50 split of net income from CI." Appellants' Brief at 23 (citations omitted). Appellants explain that, a few weeks later, Wilson wrote another email to Levine, asking Levine "to 'go back to the original agreement,' including a 50 percent split of net revenues from CI." *Id.* at 27 (citations omitted). According to Appellants, around that time, Wilson also "asked Levine whether she would 'still be paid 50[%] after expenses for any sales in September since you told me at the end of September about this change from our original agreement.'" *Id.* at 29 (citations omitted). Subsequently, Appellants observe that "Wilson sent an e-mail to Levine asking her for 'a written agreement to our new agreement[,]'" but never provided a

- 17 -

written response when Levine sent her an agreement representing that Wilson would be an independent contractor and would receive 30% of the net revenues from CI. *See id.* at 29-30. While Appellants emphasize Wilson's testimony that she "was going forward" with the new arrangement, in the same line of questioning, Wilson testified: "I mentioned a number of times in conversations that we had, and then [e]-mails prior, in October, and even in January, trying to get [Levine] to go back to the original agreement [*sic*]. It was obvious I was not happy about it. We communicated that I wasn't, and she just maintained her position." *See* Appellants' Brief at 57 (citing N.T. Trial, 7/19/2017, at 10); *see also* N.T. Trial, 7/19/2017, at 9. Thus, there is evidence that Wilson made objections to the new arrangement. Further, based on the jury's unjust enrichment verdict, the jury seemed to accept that Wilson did not agree to the compensation change. As a result, the evidence does not clearly, precisely, or unequivocally show that Wilson misrepresented to Levine that she accepted the reduced compensation. Thus, equitable estoppel does not apply.

In their sixth issue, Appellants insist that, for similar reasons, "[a]s a matter of law, Wilson waived any right to receive 50% of the net revenues of CI after October 1, 2005." Appellants' Brief at 61 (unnecessary capitalization and emphasis omitted). They explain that "[w]aiver requires that the other party knowingly gave up the right and acted clearly, unequivocally, and decisively to relinquish it." *Id.* (citations omitted). For the same reasons we conclude that equitable estoppel does not apply, we determine that waiver

- 18 -

also does not apply, as the evidence shows Wilson did not clearly, unequivocally, and decisively relinquish any right she had to 50% of the net revenues of CI after October 1, 2005.

Finally, in their seventh issue, Appellants claim that "CCU was not unjustly enriched by Wilson's services after October 1, 2005[,] where Wilson provided fewer services and received greater compensation." Appellants' Brief at 65 (unnecessary capitalization and emphasis omitted). They aver that "the jury verdict in favor of Wilson for unjust enrichment is improper because it is based on the exact same compensation that Wilson sought in her breach of contract claim." *Id.* Specifically, they argue that "Wilson's unjust enrichment claim is fundamentally a way to nullify modification of the Agreement and should be reversed on that basis." *Id.* In addition, they contend that "the award is … logically flawed because it is based on two factual assumptions contrary to the evidence: (i) that Wilson provided the same services after October 1, 2005[,] as she provided before that date, and (ii) CCU paid less for those services than it paid previously." *Id.*

The trial court discerned that "it was well within the purview of the jury to determine that Wilson did in fact do work worth fifty (50%) of net revenues from CI" after the compensation reduction. TCO at 14. Indeed, our review of the record shows that Wilson testified that, after the compensation reduction, she did not cut back on her time. *See* N.T. Trial, 7/17/2017, at 172-73. While Appellants contend that Wilson did not provide the same services after October 1, 2005, the jury apparently found that Wilson did work worth half of

CI's net revenues. ***See also*** Wilson's Brief at 9-10 (discussing Wilson's testimony versus Levine's testimony and determining that "the jury believed Wilson and did not believe Levine"). Further, Wilson points out that "[t]he jury decided that the correct measure of damages was represented by the difference between the 50% net monthly revenues and the 30% net monthly revenues after October 1, 2005. That amount was $82,258.66. The jury determined that was the amount that Wilson unjustly enriched CCU...." ***Id.*** at 10. Accordingly, we reject Appellants' last argument, and affirm the January 23, 2018 judgment.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/30/2019