MAY TERM, 1881, No. 191.　　　JUNE 15TH, 1881.

## Wilson *versus* Irvin.

1. Where, by articles of agreement under seal, the owner of timber land sold with other real estate certain standing and growing timber, with right to the vendee to enter and remove said timber, and the agreement provided that within nine years from its date the vendee should remove the timber, but that none of it should be cut until security satisfactory to the vendor should be given by the vendee for the amount of timber he proposed to cut; *Held*, That the interest of the vendor in the timber before severance, and before the entry of security, was real estate.

2. *Quære* as to the effect of an assignment of the interest of the vendor in the timber to a trustee to secure the payment of certain promissory notes held by a creditor, which assignment was not recorded for more than thirty days after its execution.

ERROR to the Court of Common Pleas of *Clearfield County*.

Attachment *sur* judgment in the Court below by E. H. Wilson against B. F. Douglass, James A. McGee, and H. B. Kinport, defendants, and E. A. & W. D. Irvin, garnishees.

By articles of agreement, dated the 6th of January, 1873, B. F. Douglass, the defendant, " agrees to sell, and does sell " to E. A. & W. D. Irvin two tracts of land in Susquehanna township, Cambria County, Pennsylvania, and "also all the white pine and oak timber growing and on a certain tract of land now occupied by William Trimble, situate in Green township, Indiana County, Pennsylvania. . . . Also, all the white pine and oak timber standing and on a certain piece of land now occupied by William Trimble, lying and adjoining the afore-mentioned tract on the south, containing sixty acres, more or less. . . . Also, the undivided one-half of all white pine and oak timber standing and on a certain tract of land situate in Green township, Indiana County, Pennsylvania, . . . containing three hundred and sixty acres more or less. . . . Also, the one undivided one-half of all the white pine and oak timber standing and on a certain piece of land situate in Green township, Indiana County, Pennsylvania, containing one hundred and twenty acres, more or less. . . . . The party of the first part also gives to the party of the second part the right of ingress and egress necessary to remove said timber where timber is sold and land reserved. E. A. & W. D. Irvin of the second part agree to pay for the above described Garmantown tract of land, one hundred and fifty acres, more or less, and for the undivided one-half interest in the Oaks tract, both of the above in fee simple, free of incumbrances, and for all the white pine and oak timber on the two lots now occupied by William Trimble, containing one hundred and twenty acres, more or less, with reservation above-mentioned, and for the undivided one-half of all the white pine

and oak standing and on the Stevens and Staff lots above-described, containing four hundred and eighty acres, more or less, the sum of $49,000, in manner following, to wit : $2000 at the date of this agreement; $3000 on the first day of March next ; $11,000 on the first day of June next; $11,000 on the first day of July, 1874 ; $11,000 on the first day of July, 1875, and the final sum of $11,000 on the first day of July, 1876.

" The party of the second part further agree to remove the timber from the four last-mentioned lots within nine years from date of this agreement.   It is also agreed that when the first three payments mentioned are made, that B. F. Douglass is to convey by good and sufficient deed to E. A. & W. D. Irvin the two pieces of land above sold in fee simple ; and it is further agreed that no timber is to be cut upon the last four mentioned lots, until security, satisfactory to the party of the first part, be given by the party of the second part for amount of timber they propose to cut."

This agreement was recorded March 1st, 1873.

On October 3d, 1873, Douglass being liable upon three promissory notes for $1000 each to the Indiana County Deposit Bank, executed an instrument under seal, reciting the above agreement and setting forth :

" I, the said B. F. Douglass, for the purpose of more perfectly securing the payment of the said notes, and for the consideration of one dollar to me in hand paid, do hereby grant, bargain, assign, transfer, and set over to William M. Stewart, Esq., in trust for the Indiana County Deposit Bank, aforesaid, all my right, title, interest, and claim to the above-recited article of agreement, and the balance of purchase-money unpaid thereon, and upon payment of said purchase-money to him, in trust as aforesaid, he to make title for the real estate and timber-leave therein described, according to the terms of said agreement, in my name and stead, as fully as I myself could do.   And further, for the purpose aforesaid, in addition to what other securities I may have heretofore given the said bank to secure the payment of the said notes, in consideration of the premises, I hereby authorize and empower the said William M. Stewart, Esq., trustee as aforesaid, on failure of the payment of said notes, or any of them, or any notes that may be given as renewals of any of them at the maturity thereof, to proceed to collect the balance of the purchase-money unpaid on the said article of agreement, and to use all legal remedies for the enforcement of the terms of the said agreement which may be deemed necessary, and to apply any proceeds which may be realized to the payment of the said promissory notes, with the inter-

est. To have and to hold all my title, interest, and claim to the agreement, and the real estate and timber-leave therein described unto the said William M. Stewart, his heirs and assigns, to and for the use and purposes hereinbefore mentioned."

This instrument was acknowledged July 23d, 1875, and recorded July 26th, 1875.

On the 27th of November, 1876, a judgment was obtained in the Court of Common Pleas, of *Indiana County*, by R. J. McConnaghy against B. F. Douglass and others for $131.33. This judgment was assigned to the Indiana County Deposit Bank. An execution was issued upon it, under which levy was made upon the real estate of Douglass, including the tracts described in the above agreement, and they were sold October 5th, 1877, to the Indiana County Deposit Bank. Deeds from the sheriff for the same were duly executed, acknowledged, and delivered.

On the 2d of August, 1879, E. A. & W. D. Irvin, for $18,000, bought from the Indiana County Deposit Bank "the interest of the bank in the land purchased at sheriff's sale as the property of B. F. Douglass, in Green township, on which is growing the timber which you (the bank) purchased from the said Douglass in February, 1873, being four different pieces."

On the 10th of November, 1873, E. H. Wilson, the plaintiff, obtained a judgment against Douglass, James A. McGee and H. B. Kinport for $10,000, and on November 3d, 1877, issued an attachment on this judgment, which was served on E. A. & W. D. Irvin, as individuals and as a firm, as garnishees, on the following day. The garnishees pleaded *nulla bona*.

On the trial in the Court below the above facts appeared in evidence, and it was admitted by the parties, for the purpose of the suit, that at the time of the service of the attachment on the garnishees and since, there was so large a sum of money due from these garnishees to Mr. Douglass on the sale of timber as would satisfy this judgment, and more than satisfy it, if it were legally applicable on this attachment.

W. D. Irvin testified as follows:

"Question. How many years have you been operating on it?

"Answer. Do you mean on the land in Indiana County?

"Q. Yes. The land in Indiana County. The four tracts in Green township.

"A. This is the third year.

"Q. How long will it be yet before you will have all the timber removed?

"A. We have about another winter's work on it.

"Q. How long would it take you to remove all the timber from that land, to proceed with it as rapidly as possible? What is the shortest space of time in which you could have removed all of the timber on that land?

"A. If we had good and favorable weather we could have done it in three years."

He further testified that no security had been given for the removal of the timber under the contract.

Upon this state of facts, counsel for the plaintiff asked the Court to charge,

1. The sale of the timber upon which the indebtedness of the garnishees arose to B. F. Douglass was in law a severance of the timber from the land, which had the effect of converting it into personal property.

2. After said sale, the interest of Douglass, the vendor of said E. A. & W. D. Irvin, was personal property.

3. Such interest was not bound by judgments entered up against Douglass and others, the vendors of said E. A. & W. D. Irvin, and levy and sale of it as real estate conveyed no title to the purchaser at the sheriff's sale.

4. Such indebtedness stands on the same footing as any other debt, and is subject to attachment.

5. Under the evidence, it being admitted that there is sufficient in the hands of the garnishees, the plaintiff is entitled to recover.

The Court, J. H. Orvis, J., refused all of these points, and charged the jury:

We being of the opinion that the interest in the four tracts of land in Indiana County, sold by B. F. Douglass to E. A. & W. D. Irvin, by articles of agreement of January 6th, 1873, was real estate, the legal title to which remained in the vendor, the same was bound by the judgments against him in Indiana County. The interest of Douglass in these lands having been assigned to the Indiana Deposit Bank as collateral security for notes held by said bank, and subsequently having been sold at sheriff's sale and purchased by said bank, no right to recover the purchase-money remained in B. F. Douglass, and therefore direct you to find a verdict against the plaintiff and in favor of the garnishees.

Plaintiff excepted to the answers to the points and the charge.

May 23d, 1881, the jury found a verdict for the garnishees, upon which judgment was entered.

[Wilson v. Irvin.]

Plaintiff then took a writ of error, assigning as error the rulings of the Court as above set forth.

*McEnally* and *McCurdy* for plaintiff in error.

If the interest of Douglass, as vendor, after his sale to the Irvins of the timber, with nine years to remove the same, was real estate, so that judgments entered up against him would be a lien upon that interest and hold the balance of the purchase-money, then it would appear to follow that the purchase-money would not be the subject of attachment: Stewart. *v.* Coder, 1 Jones, 90.

If the purchase-money claim was only personal property, the judgments against Douglass would be no lien, the sheriff's sale would pass no title, and, under the evidence in this case, plaintiff would be entitled to recover. The authorities are few, and none cover the precise point: 1 Greenleaf on Evidence, § 271; Soller on Executors, 194, 195; Huff *v.* McCauley, 3 P. F. Smith, 206; Pattison's Appeal, 11 P. F. Smith, 297; McClintock's Appeal, 21 P. F. Smith, 365.

The assignment to Stewart as trustee not being recorded for thirty days was void, and does not affect the attachment: Wallace *v.* Wainwright, 6 Norris, 263.

*Murray & Gordon* for the garnishees, defendants in error.

Before the contract, the timber growing on the land was realty, and the rule is that it continued to be real until the owner should give it a different character: Rogers *v.* Gilinger, 6 Casey, 188; Shepherd's Touchstone, 90.

Much the greater portion of this timber interest was an undivided half, and could not be severed without the consent, in writing, of the other joint owners: Act May 4th, 1869, § 1, Purdon, 1467.

It was treated as real estate by the parties from first to last: Broom's Legal Maxims, 545.

The time given in the contract for its removal is three times as long as the time necessary for that purpose, and it is stipulated that the timber should not be severed until other security was given: Huff *v.* McCauley, 3 P. F. Smith, 206; McClintock's Appeal, 21 P. F. Smith, 366; Yeakle *v.* Jacob, 9 Casey, 376; Addison on Contracts, 31; Crosby *v.* Wadsworth, 6 East, 610; Pattison's Appeal, 11 P. F. Smith, 296; Caldwell *v.* Fulton, 7 Casey, 475; Smith on Contracts, 122, *note;* Boults *v.* Mitchell, 3 Harris, 381; Clap *v.* Draper, 4 Mass., 266; Tucker *v.* Andrews, 13 Maine, 124.

Whether the timber is to be treated as real or personal, the assignment of October 3d, 1873, over three years before

the attachment was laid, passed the title to this money, and there was nothing for the attachment to reach.

PER CURIAM: The only question in this case upon which the several assignments of error all depend, is whether the agreement between Douglass and the Irvins for the sale of the standing timber converted it into personal property. By this agreement the Irvins were to remove the timber within nine years from the date of the agreement, and as to certain parts of the land no timber was to be cut until satisfactory security was given by the vendees for the amount of timber they proposed to cut. As no immediate severance was in contemplation, it is clear, according to McClintock's Appeal, 21 P. F. S., 365, that it remained real estate, subject to the lien of judgment against the vendor. His title passed to the sheriff's vendee, and with it his claim to the purchase-money. It was not then subject to the attachment, and the charge of the learned Court below was entirely right.

Judgment affirmed.