**Angela HYKES, Appellant,**

v.

**Morgan HUGHES & Ingrid Hughes, Williams Grove Amusement, Inc. & Williams Grove, Inc. d/b/a Williams Grove Amusement Park, Appellees.**

Superior Court of Pennsylvania.

Submitted July 28, 2003.

Filed Oct. 23, 2003.

Gregory M. Feather, Harrisburg, for appellant.

David C. Harrison, Philadelphia, amicus curiae.

David R. Breschi and Melissa A. Swauger, Harrisburg, for Hughes and Williams Grove Amusement, Inc., appellees.

Before: MUSMANNO, TODD and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Appellant Angela Hykes appeals the order granting the preliminary objections of Appellees Morgan C. Hughes, Ingrid Hughes, Williams Groves Amusement, Inc., and Williams Grove, Inc., d/b/a Williams Grove Amusement Park. We reverse.

¶ 2 "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *White v. PennDOT*, 738 A.2d 27, 31 (Pa.Cmwlth.1999). When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. *DeMary v. Latrobe Printing Co.*, 762 A.2d 758 (Pa.Super.2000); *Main Line Health Inc. v. Medical Professional Liability Catastrophe Loss Fund*, 738 A.2d 66, 68 n. 13 (Pa.Cmwlth.1999). Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. *Pacurariu v. Commonwealth*, 744 A.2d 389, 391 n. 1 (Pa.Cmwlth. 2000); *White*, 738 A.2d at 31. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Edwards v. Germantown Hospital*, 736 A.2d 612, 614 (Pa.Super.1999).

¶ 3 On August 7, 1999, Appellant, who was 15 years old at the time, reported to work for Williams Grove Amusement Park. She was instructed by management to appear with her "cash box" at a particular station to sell tickets. After receiving conflicting directives from her employer, Appellant informed a relief worker "that she had quit." Likewise, Appellant had advised Appellees Morgan and Ingrid Hughes that she quit. In fact, while en route to phone her mother for transportation home, Appellant was informed by two co-employees "that they had heard she was quitting."

¶ 4 In advance of leaving the amusement park, Appellees' employees instructed Appellant to appear at the office to reconcile a discrepancy in her daily receipts. The content of Appellant's "cash box" was examined and produced an accusation that "a sum of money was missing[.]" Despite the denial of wrongdoing, Appellant was placed in a closed room and accused of theft, her backpack was examined and she was strip-searched. After the passage of 2–3 hours, Appellant was told another employee confessed to taking the money, and she was released without further incident. Thereafter, Appellant filed a 16–count

complaint alleging, *inter alia,* Appellees engaged in negligent or intentional infliction of emotional distress, assault and battery, and gross negligence/outrageous conduct.

¶ 5 In reply, Appellees filed preliminary objections raising the "exclusivity" provision of the Worker's Compensation Act (hereinafter the "Act"[1]), which precluded suit because Appellant's alleged injuries arose while "in the course of employment." Further, Appellees urged no "personal animus" exception to the Act existed because the injuries were not caused by a third party for personal reasons to harm Appellant. The trial court agreed stating, in pertinent part, the following in support thereof:

> [Appellant] maintains that her causes of action arose after she quit her employment, therefore, this suit is not barred by the Worker's Compensation Act. We agree with [Appellees] that, accepting as true [Appellant's] pleading of facts and every inference fairly deducible therefrom, [Appellant's] injuries occurred by operation of her employer's business during an investigation of her having just stolen money while on the business premises. As such her presence was required by the nature of her employment. Accordingly, [Appellant] was engaged in the furtherance of her employer's affairs at the time that her alleged injuries occurred. Simply saying she quit was not, under the circumstances, sufficient to constitute a break in the course of employment during the investigation that was conducted on the employer's premises immediately after she was accused of stealing.

> \*　\*　\*　\*　\*　\*

For the foregoing reasons, [Appellant's] complaint must be dismissed be-

cause she has an exclusive remedy under the Worker's Compensation Act.

Trial Court Opinion, 1/21/03, at 3–4 & 5. We disagree.

▮ ¶ 6 "Where an employee's injury is compensable under the Act, the compensation provided by the statute is the employee's exclusive remedy against his or her employer." 77 P.S. § 481(a). "Thus, an injured employee cannot maintain a tort action against his or her employer if the injury is compensable under the provisions of the Act." *Gertz v. Temple University,* 443 Pa.Super. 177, 661 A.2d 13, 15 (1995). Where an employee's injury is compensable, the exclusivity provision of the Act immunizes fellow employees from liability for their negligence. *Albright v. Fagan,* 448 Pa.Super. 395, 671 A.2d 760, 762 (1996). The phrase "injury arising in the course of employment" is defined by the Act as follows:

> [A]ll other injuries sustained while the employe[e] is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and . . . all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe[e], who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe[e]'s presence therein being required by the nature of his employment."

77 P.S. § 411(1).

▮ ¶ 7 Absent a statutory or contractual provision to the contrary, the law recognizes the power of either party to terminate an employment relationship for any or no reason. *Geary v. U.S. Steel*

1. 77 Pa.C.S.A. § 441.

*Corp.,* 456 Pa. 171, 175, 319 A.2d 174, 176 (1974); *Holewinski v. Children's Hospital of Pittsburgh,* 437 Pa.Super. 174, 649 A.2d 712, 715 (1994). Whether, on the facts found, Appellant was injured in the course of her employment is a question of law. *Griffin v. Acme Coal Co.,* 161 Pa.Super. 28, 54 A.2d 69 (1947). Whether a relationship of employer and employee existed at the time of the injury is a question of fact. *See Dainty v. Jones & Laughlin Steel Co.,* 263 Pa. 109, 106 A. 194 (1919).

¶ 8 In *Dainty,* the employee reported to work in a timely fashion, started his engine as locomotive engineer, and subsequently left the locomotive in the charge of another. It appears that Dainty took refuge in a nearby shanty on his employer's premises. However, it was not long before the general foreman located the absentee employee and inquired of his status. Dainty indicated, "[H]e was mad at himself and everybody else;" the general foreman replied, "If that is the way you feel, you had better take a night off[.]" Dainty answered, "All right," but he still remained on the premises until the locomotive crew began to spot furnaces. While one of the crew climbed on the locomotive, Dainty exited onto the footboard of the engine, and, during the trip, fell to the tracks. Dainty's body was struck by one of the ladles, which mangled his body and resulted in his immediate death.

¶ 9 A claim for benefits was awarded in favor of the widow and children of the deceased by the referee. The compensation board affirmed the referee's findings of fact, "At the time the employee suffered the injury, he was in the course of his employment and engaged in the furtherance of the business or affairs of his employer, on the employer's premises." *Dainty,* at 111, 106 A. at 195.

¶ 10 An appeal was taken to the Court of Common Pleas of Allegheny County, which tribunal reversed the compensation board.

In reversing the judgment of the Court of Common Pleas, and affirming the order of the referee approved by the compensation board, the Supreme Court wrote in relevant part:

> ***The controlling question concerns the alleged discharge of Dainty prior to the accident which caused his death, and the answer to that involves the determination of pure issues of fact.*** The compensation authorities, whose particular province it is to find the facts, after considering what was said and done at the time of the alleged dismissal, together with all the attending circumstances, concluded that deceased had neither been discharged from nor quit his job; on the consideration of the underlying findings, it could not properly be held that this conclusion was utterly lacking in support, and the learned court [of common pleas] below stepped beyond its authority, under the statute, when it undertook to reach a contrary conclusion.
>
> The issue of the alleged discharge being decided against the employer, the conclusion, on the other findings in the case, that the deceased met an accidental death during the course of his employment with defendant company, follows as a matter of course; hence the court [of common pleas] below erred in setting aside such conclusion and substituting therefore its own "deduction."

*Dainty,* at 113, 106 A. at 195–196 (emphasis added); *see also County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (Pa. 1988) (grievance over discharge is a question of fact).

¶ 11 Applying the standard for reviewing preliminary objections, which requires that "all material facts set forth in the challenged pleading are admitted as true," *see DeMary,* 762 A.2d at 761, no one may take issue with the fact that Appellant reported for work, performed her duties

for a portion of her scheduled employment and, then, *informed her co-employees and employer that she quit*. This all occurred in advance of Appellant seeking to phone her mother for a ride home before being directed to appear at the office. *See* Appellant's complaint, ¶¶ 9, 10, 41, 51(a), (b) & (c), 89, 96, 128(a), (b) & (c), and 135(a), (b) & (c).

¶ 12 Accepting as a fact, as we must, that Appellant quit her job it is reasonable to infer, at least at this stage of the litigation, that she was no longer employed by Appellees.[2] *Contrast Griffin*, 54 A.2d at 69 ("The fact that claimant was not actually working th[e] day [he went to the job site to collect his pay when scheduled to do so] did not affect his status as an employee [ . . . ] in the absence of any evidence that he had been discharged or quit, or that he was not willing to respond to a request to work."). The trial court's determination to the contrary is at odds with a view of the pleadings under a preliminary objections standard. *See DeMary*, 762 A.2d at 761; *see also Wawa, Inc. v. Litwornia, et al.*, 817 A.2d 543 (Pa.Super.2003).

¶ 13 Here, as in *Dainty*, "[t]he controlling question concerns the alleged [end of employment, discharge in *Dainty* and quit in the present case,] of [the complainant] prior to the accident [ . . . ], and the answer to that involves the determination of pure issues of fact." Such a "determination" is within the bailiwick of the trier-of-fact and is not appropriate for resolution at the preliminary objections stage of this case, especially given the admission of Appellant's termination of employment prior to the alleged injuries.

¶ 14 Therefore, we find that it was premature for the trial court to conclude as a matter of law that the events surrounding Appellant's claims arose "in the course of employment." It may be that a jury will find, after hearing all the circumstances, Appellant terminated her employ. If such turns out to be the case, "The issue of the alleged discharge being decided against the employer, the conclusion, on the other findings in the case, that the [complainant was not injured] during the course of h[er] employment with defendant company, follows as a matter of course[.]" *Dainty*, at 113, 106 A. at 195–196. Hence, we find the trial court erred in stepping beyond its authority (at the preliminary objections stage) and substituting its own "deduction" on the "course of employment" issue (a conclusion of law) and Appellant's "employee" status (a finding of fact), the latter of which is a matter for a trier-of-fact to decide when in dispute.

¶ 15 Order reversed. Jurisdiction relinquished.

---

**2.** It seems reasonable to infer that, if one is not an "employee" by means of terminating the employer/employee relationship, any injury that occurs subsequent to the discharge/quit event would fall outside the perimeters of the "course of employment" language in the Worker's Compensation Act (hereinafter the "Act"). *See* 77 P.S. § 411(1).

The trial court and Appellees contend that the "exclusivity" provision of the Act was triggered by Appellant's "presence [on the premises] being required by the nature of h[er] employment" to verify her "cash box."

Therefore, any subsequent action by the employer comes under the umbrella of "course of employment" to insulate the employer from suit. This logic is flawed. A condition precedent to the applicability of the Act's preceding phrase, of necessity, requires that the complainant be an "employee." Here, Appellant's averment of non-employment status in the various passages of her complaint discounts the relevancy of Section 411(1). *See* Appellant's Complaint, ¶¶ 9, 10, 41, 51(a), (b) & (c), 89, 96, 128(a), (b), (c) & (d), and 135(a), (b), (c) & (d).