## First Senior Financial Group v. Suib

402

*Neil E. Jokelson*, for plaintiff.

*Daniel P. McCarrery*, for defendants American Tax & Advisory Corp. and Steven Suib.

*A. Jordan Rushie*, for defendant Louis Aarons.

MCINERNEY, *J.*, August 26, 2013—

## I. BACKGROUND

Plaintiff First Senior Financial Group ("First Senior") appeals from an order entered on March 8, 2011 by the late Honorable Albert Sheppard, Jr. In that order, Judge Sheppard sustained, in part, preliminary objections that: (1) dismissed Steven Suib ("Suib") from the case in his individual capacity; (2) dismissed counts III and IV against Suib and his company, American Tax & Advisory Corp. ("ATAC"), for tortious interference with existing contractual relations and tortious interference with prospective contractual relations pursuant to the "gist of the action" doctrine; and (3) struck First Senior's demands for punitive damages. First Senior complains Judge Sheppard erred in regard to the second and third aspects of his order. In particular, First Senior argues Judge Sheppard erred in striking counts III and IV against Suib and ATAC pursuant to the gist of the action doctrine and erred in striking First Senior's claims for punitive damages against Suib and ATAC by striking its demands therefore at counts III and IV.

On December 23, 2010, First Senior commenced the instant action by filing a complaint against Suib, ATAC, Louis Aarons ("Aarons"), Lisa Romansichov

("Romansichov"), and William Midler ("Midler"). In the complaint, First Senior made the following averments. First Senior is in the extremely competitive industry of "educating seniors and retired individuals with regard to their personal financial savings, investments and retirement options and needs." (Compl. ¶ 12.) Suib is the President of ATAC and a registered financial consultant. (Compl. ¶ 43.) By and through ATAC, Suib is one of First Senior's competitors. (Compl. ¶¶ 44-45.)

Prior to and including Aarons, Romansichov, and Midler's association with First Senior, First Senior has required all of its employees and independent contractors to sign certain agreements that contain non-compete and non-solicitation clauses. (Compl. ¶ 18.) Aarons signed such agreements in 2006 when he became an independent contractor and again in 2009 when he became an employee. (Compl. ¶¶ 19-20, 25-26.) Midler signed such agreements in 2009 when he became an independent contractor and Romansichov signed such agreements in 2009 when she became an employee. (Compl. ¶¶ 21-22, 28-29.)

In February 2010, Aarons resigned from his employment with First Senior effective immediately. (Compl. ¶ 40.) In July 2010, Romansichov resigned from her employment with First Senior effective immediately. (Compl. ¶ 41.) And in November 2010, Midler terminated his relationship with First Senior effective immediately.[1] (Compl. ¶ 42.)

---

1. The complaint stated Midler terminated his relationship with First Senior in November 2009. A reasonable inference, however, is that First Senior meant to say November 2010 because, as will be discussed, the complaint also goes on to state that after Aarons went to work for Suib and ATAC, Aarons wrongfully solicited Midler for employment

After terminating their relationships with First Senior, Aarons, Romansichov, and Midler each at some point went to work for Suib and ATAC. (Compl. ¶ 46.) And based upon information and belief, it was Aarons who first went to work for ATAC and thereafter solicited Romansichov and Midler to work for ATAC at Suib's behest while they (Romansichov and Midler) were still working for First Senior. (*See* Compl. ¶ 48.) Suib, however, knew or should have known that hiring Aarons, Romansichov, and Midler would result in them breaching non-solicitation and non-compete convenants they had with First Senior. (Compl. ¶ 45.)

Base on the above averments, First Senior asserted causes of action against Aarons, Romansichov, and Midler for breach of contract (count I), tortious interference with existing contractual relations (count II), and misappropriation of trade secrets (count V) and causes of action against Suib and ATAC for tortious interference with existing contractual relations (count III) and tortious interference with prospective contractual relations (count IV).

On January 31, 2011, Aarons, Suib, and ATAC filed preliminary objections to First Senior's complaint. The preliminary objections included an objection in the nature of a demurrer based on the gist of the action doctrine. By heading, this objection sought dismissal of counts II and III. (See, e.g., defs.' prelimin. objections mem. p. 11.) In substance, however, this objection sought dismissal of

---

with ATAC while Midler was still an independent contractor for First Senior. (*See* Compl. ¶¶ 40, 42, 48.)

counts II, III, and IV. (*See,* e.g., defs.' prelimin. objections mem. p. 12.)

Regarding the gist of the action doctrine, these defendants asserted the gist of the action doctrine precludes a party from recasting an ordinary breach of contract action into a tort action. (Defs.' prelimin. objections mem. p. 11.) These defendants then argued: "Herein, [First Senior] alleges Aarons breached [his] employment contract by establishing a business relationship with ATAC. [First Senior's] tortious interference claims arise out of the breach of contract claim. As such, said claims are barred by the [g]ist of the [a]ction [d]octrine." (Defs.' prelimin. objections mem. pp. 11-12.)

Aarons, Suib, and ATAC's preliminary objections also included an objection in nature of a demurrer to First Senior's requests for punitive damages. (See, e.g., defs.' prelimin. objections mem. pp. 10-11.) In the complaint, First Senior asserted Suib and ATAC's wrongful conduct at counts III (tortious interference with existing contractual relations) and IV (tortious interference with prospective contractual relations) was "outrageous and demonstrate[d] a reckless indifference to the interests of First Senior." (Compl. ¶¶ 72, 76.) First Senior further asserted the conduct was "so egregious that punitive damages must be assessed...as a penalty and deterrent against such conduct in the future." (Compl. ¶¶ 72, 76.)

In the preliminary objections, Suib and ATAC argued First Senior's demands for punitive damages should be stricken because the complaint "[s]et[] forth no facts or

circumstances alleging that the conduct of the Defendants was 'outrageous' because of...'evil motive' or that any Defendant acted with reckless indifference to the rights of [First Senior]." (Defs.' prelimin. objections mem. p. 11.) To the contrary, Suib and ATAC asserted First Senior's complaint "set[] forth a run of the mill business dispute between competing business interests whereby a former employee/independent contractor is now working for a competing business." (Defs.' prelimin. objections mem. p. 11.)

On February 22, 2011, First Senior filed a response in opposition to the preliminary objections. Regarding the gist of the action doctrine and the count against Aarons for tortious interference with existing contractual relations, First Senior argued it (count II) should not be precluded because "Aarons' obligations to neither compete nor solicit are breaches of social policy as well [as breaches of contract] because his enticement of [First Senior's] former employees, [Romansichov] and Midler, at the behest of [] Suib, was so reckless that contract principles are collateral." (Pl.'s Resp. Mem. p. 15.) Regarding the counts against Suib and ATAC, First Senior argued count III for tortious interference with existing contractual relations should not be precluded "because [First Senior] has no contract with [] Suib and ATAC." (Pl.'s Resp. Mem. p. 15.) First Senior further argued "Count III is essentially grounded and based on social policy, and not any contractual obligations owed by [] Suib/ATAC to [First Senior]." (Pl.'s resp. mem. p. 16.) First Senior made no specific response in opposition to the objection to count IV, likely because of the way the

defendants had raised their objection based on the gist of the action doctrine (e.g., only including counts II and III in the heading for the objection).

Regarding punitive damages, First Senior argued "the complaint does include facts which should make the Court infer that Suib acted in such a way to make punitive damages appropriate." (Pl.'s resp. mem. p. 12.) Specifically, First Senior pointed to its allegations that "Suib knew of the contracts which Aarons, [Romansichov], and Midler had with [First Senior]" and with that knowledge: (1) "enticed Aarons to be employed with ATAC" and (2) "directed Aarons to recruit [] [Romansichov] and Midler." (Pl.'s Resp. mem. p. 12.) First Senior then argued:

> When competitors play by the "rules of the road," and one competitor recruits the services of another competitor's employees, there is no foul play if that recruiting competitor has no knowledge of contractual restrictions applying over his recruits. However, when a competitor knows of such covenants, and acts contrary to the agreements between his competitor and its former employees, that conduct is reckless.

(Pl.'s resp. mem. p. 12.)

By order dated March 8, 2011, Judge Sheppard disposed of the preliminary objections as discussed above. On April 2, 2013, a praecipe to settle, discontinue, and end was filed as to all the remaining defendants; that is, Aarons, Romansichov, and Midler. On April 30, 2013, First Senior filed a notice of appeal from the March 8, 2011 order issued by Judge Sheppard, which had ended the case as to Suib

and ATAC. Following Judge Sheppard's untimely death, the case was last assigned to this court. Accordingly, it was this court that ordered First Senior to file a Pa. R. App. P. 1925(b) statement. First Senior timely complied and makes the following complaints of error:

1. Judge Sheppard erred in his order dated March 8, 2011 in dismissing count III and count IV of the complaint (which allege, respectively, a tortuous interference with existing contractual relations and a tortuous interference with prospective contractual relations) "pursuant to the 'gist of the action' doctrine" in that: (a) the plaintiff had no contract with defendant Steven Suib ("Suib") and defendant American Tax & Advisory Corp. ("ATAC"); (b) count III and count IV did not arise from a contract and the duties allegedly breached were not created in any contract between plaintiff and defendants Suib and ATAC; (c) count III and count IV do not duplicate any breach of contract claim and their success does not depend on the success of any contract claim; (d) count III and count IV are not a recast of count I of the Complaint; (e) count III and count IV are essentially grounded and based on social policy and not any contractual obligations by defendants Suib/ATAC to plaintiff; and (f) the gist of the action doctrine has not been adopted by the Pennsylvania Supreme Court and as such, it is contended that it is not an appropriate doctrine under Pennsylvania law.

2. Judge Sheppard[] erred in his order of March 8, 2011 striking the plaintiff's demand for punitive damages.

Punitive damages were properly pled in count III and count IV of the complaint based upon the intentional conduct alleged in those counts in the complaint. It is acknowledged that counts III and IV provide the exclusive basis for the imposition of punitive damages with respect to defendants Suib and ATAC.

(Pl.'s 1925(b) statement, ¶¶ 1-2.)

## II. DISCUSSION

In the opinion of this court, Judge Sheppard properly struck First Senior's demands for punitive damages against Suib and ATAC by striking its demands therefore in counts III and IV. This court, however, would not have dismissed counts III and IV pursuant to the gist of the action doctrine as there was no contractual relationship between First Senior and either Suib or ATAC.[2]

### A. Standards and Scopes of Review

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *Hykes v. Hughes*, 835 A.2d 382, 383 (Pa. Super. Ct. 2003) (quotations omitted). "The court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief." *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008). "For the purpose of evaluating the legal sufficiency of

---

2. First Senior did not challenge Judge Sheppard's dismissal of Suib from the action. Accordingly, any liability for count III or IV would be against ATAC only. For ease of discussion, however, we will continue to reference both Suib and ATAC below.

the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." *Id.* When an appellate court reviews an order sustaining preliminary objections in the nature of a demurrer, "the standard of review is denovo and the scope of review is plenary." *Id.*

### B. Punitive Damages

In Pennsylvania, "'[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005), quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984), quoting Restatement (Second) of Torts § 908(2) (1979). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison*, 870 A.2d at 770. The purpose of punitive damages is twofold. *Id.* The first purpose is to punish a tortfeasor for outrageous conduct. *Id.* The second is to deter the tortfeasor or others like him or her from similar conduct in the future. *Id.*

While this court would not characterize First Senior's allegations as merely "a run of the mill business dispute between competing business interests whereby a former employee/independent contractor is now working for a competing business" as was done by Suib and ATAC, (Defs.' prelimin. objections mem. p. 11), neither would this court say Judge Sheppard erred in striking First

Senior's demands for punitive damages against Suib and ATAC as the conduct First Senior pointed to in opposition to the preliminary objection was merely that Suib and ATAC intentionally (i.e., tortiously) interfered with the contractual relationships it had with two former employees and one former independent contractor. If First Senior's argument was to be accepted, punitive damages would be appropriate any time a subsequent employer tortiously interferes with a non-compete or non-solicitation covenant between an employee and his or her previous employer without any individualized consideration of whether the subsequent employer's conduct was outrageous.

In response to the objection to punitive damages, First Senior argued:

> When competitors play by the "rules of the road," and one competitor recruits the services of another competitor's employees, there is no foul play if that recruiting competitor has no knowledge of contractual restrictions applying over his recruits. However, when a competitor knows of such covenants, and acts contrary to the agreements between his competitor and its former employees, that conduct is reckless.

(Pl.'s resp. mem. p. 12.) To be liable for tortious interference with an existing contractual relationship, one must be found to have intentionally and improperly interfered with the performance of a contract between another and a third person by inducing or otherwise causing the third person to not perform the contract. *Walnut St. Associates, Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. Ct.

2009), *citing* Rest. 2d Torts § 766 (1979). That is all First Senior argued: that Suib and ATAC intentionally interfered with the contracts between First Senior and three of its former employees. But "a court may not award punitive damages merely because a tort has been committed." *McClellan v. Health Maint. Org. of Pennsylvania*, 604 A.2d 1053, 1061 (Pa. Super. Ct. 1992). "Additional evidence must demonstrate willful, malicious, wanton, reckless or oppressive conduct." *Id.* Such additional evidence, however, was not cited to in this case.

Moreover, this is not a case where intentional fraud has been adequately alleged. *Cf. McClellan*, 604 A.2d at 1061 (stating "it is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages."). Rather, this is a case where intentional interference with contractual relationships has been alleged, but no other facts have been cited as to why that conduct was reckless.

"'Reckless indifference to the interests of others', or as it is sometimes referred to, 'wanton misconduct', means that 'the actor has intentionally done an act of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, *and so great as to make it highly probable that harm would follow.*'" *Id.* (citation omitted)(emphasis added). The fact that it has been alleged a subsequent employer knows of non-compete and non-solicitation covenants between an employee and his or her previous employer, but acts contrary to them, does not in and of itself rise to

the level of reckless indifference to the interests of others as that act in and of itself is not so great as to make it highly probable that harm would follow. The cited conduct just lacks that element of outrage necessary to make punitive damages appropriate. *See generally* Restatement (Second) of Torts § 908 cmt. b (stating that "[s]ince the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate — which is to say, conduct involving some element of outrage similar to that usually found in crime.")

In sum, while an underlying tort may have been sufficiently alleged, facts sufficient to show the extreme or outrageous conduct necessary for an award of punitive damages were not cited. Accordingly, Judge Sheppard's decision to strike First Senior's demands for punitive damages against Suib and ATAC should be affirmed.

## C. Gist of the Action Doctrine

First Senior also complains Judge Sheppard erred in dismissing the counts against Suib and ATAC for tortious interference with existing contractual relations and tortious interference with prospective contractual relations pursuant to the gist of the action doctrine primarily because First Senior had no contract with Suib or ATAC. (Pl.'s 1925(b) statement ¶ 1.) This court would not have dismissed these counts (counts III and IV) pursuant to gist of the action for that reason.

The gist of the action doctrine "is designed to maintain

the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). To maintain this conceptual distinction, the doctrine will preclude a party from raising a tort claim "where the essence of the claim actually lies in a contract that governs the parties' relationship." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 718 (Pa. Super. Ct. 2005). Thus, the gist of the action doctrine will act to bar tort claims: "1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007).

In this case, while the gist of the action doctrine could have served as a bar to the count against Aarons, Romansichov, and Midler for tortious interference with existing contractual relations (count II) because there were contractual relationships between these defendants and First Senior, there was no contractual relationship between First Senior and either Suib or ATAC. As such, there was no basis upon which the gist of the action doctrine would bar the claims against them for tortious interference with existing contractual relations count III) or tortious interference with prospective contractual relations (count IV), and this court would not have dismissed those counts based on gist of the action.