J-S75007-17

2018 PA Super 116

| | | |
|---|---|---|
| RANDY E. HOFFMAN AND SHERRY L. HOFFMAN, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 152 WDA 2017 |
| SCOTT A. GONGAWARE AND KERN BROTHERS LUMBER COMPANY, A/K/A KERN BROTHERS LUMBER COMPANY, INC. | : | |

Appeal from the Order January 10, 2017
In the Court of Common Pleas of Somerset County Civil Division at
No(s):  No. 503 Civil 2014

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

OPINION BY SHOGAN, J.:                    **FILED MAY 4, 2018**

Randy E. Hoffman and Sherry L. Hoffman ("Appellants") appeal from the trial court's January 10, 2017 order sustaining the preliminary objections in the nature of a demurrer of Scott A. Gongaware and Kern Brothers Lumber Company ("Appellees") and dismissing Appellants' complaint. On appeal, Appellants argue that the trial court erred in concluding that their reservation of timber rights in a duly recorded deed constituted an interest in personal property, rather than land, and in finding that they forfeited this interest when they failed to remove the timber in a reasonable amount of time.   After careful review, we reverse and remand for further proceedings.

The trial court summarized the facts as follows:

> [Appellants], Randy E. Hoffman and Sherry L. Hoffman, husband-and-wife, were the owners of a 20 acre parcel of land

on which a crop of timber existed in Lincoln Township, Somerset County, together with a residence in which the [Appellants] apparently resided. On October 12, 1977 [Appellants] conveyed the premises to Consolidation Coal Company by deed recorded in record book volume 812, page 646 and recorded on the following day [("the 1977 Deed")]. Of particular importance are the various "Exceptions and Reservations" which we shall include verbatim.

> EXCEPTING AND RESERVING all coal and mining rights previously conveyed by predecessors in title.
>
> ALSO EXCEPTING AND RESERVING unto the grantors, their heirs and assigns, all the oil and gas underlying the premises hereby conveyed and all necessary and convenient rights for the removal thereof, provided that such operations do not interfere with the coal mining operations of the grantee, its successors or assigns.
>
> ALSO EXCEPTING AND RESERVING unto the grantors, their heirs and assigns, all of the timber on the premises hereby conveyed and all necessary and convenient rights for the removal thereof, provided that the grantors, their heirs and assigns, must exercise said right upon six (6) months written notice by the grantee, its successors or assigns, and provided further, that such operations by the grantors, their heirs and assigns, do not interfere with the coal mining operations of the grantee, its successors or assigns.[1]
>
> ALSO EXCEPTING AND RESERVING unto the grantors, their heirs and assigns, the right to remain at the residence located on the premises hereby conveyed, together with the full right to use and possession of an area constituting a 200 foot radius surrounding said residence, provided that: (1) the grantors, their

_____

[1] As discussed *infra*, the language of the 1977 Deed requires Appellees to provide written notice to Appellants, at which point Appellants have six months to remove the timber from the property. The 1977 Deed does not require Appellants to provide notice to Appellees before Appellants exercise their right to the timber on the property.

heirs and assigns, may remain on said premises at their sole risk and expense, with the understanding and agreement that the grantors, their heirs and assigns, shall pay to the grantee, its successors or assigns, and advance annual rental of a sum equal to all taxes levied on all the premises hereby conveyed used by the grantors, their heirs and assigns; (2) the grantee, its successors or assigns, shall have exclusive possession of the premises hereby conveyed upon six (6) months written notice to the grantors, their heirs and assigns, provided that in no event shall the grantors, their heirs and assigns, [be] deprived of the use and possession of the aforesaid residence and surrounding area for a period less than nine months from October 12, [1977], (that is, notice by the grantee, its successors or assigns, to the grantors, their heirs and assigns, to remove from the aforesaid residence and surrounding area shall not be given within the first three (3) months after October 12, 1977); (3) the grantors, their heirs and assigns, shall remove from the premises hereby conveyed on or before the expiration of the aforesaid notice. All crops, livestock and other removable personal property.

IN THE EVENT THAT the grantee, its successors or assigns, determines at any time to remove the residency [erected on] the premises hereby conveyed, the grantors, their heirs and assigns, shall have the right of first refusal relative to the sale of said residence, or any and all salvageable parts thereof, at the same purchase price as offered by any third party who has submitted and executed written offer to purchase the aforesaid residence and/or any part thereof, and grantee, its successors or assigns, shall submit a copy of such executed written offer to the grantors, their heirs and assigns, who shall have sixty (60) days from the date of receipt of such written offer to either exercise or refuse to exercise the right to purchase the aforesaid residence or any part thereof for the same purchase price as set forth in said written offer.

The Grantee in [the 1977 Deed], Consolidation Coal Company, conveyed the premises under and subject to the

foregoing "Exception and Reservation" clauses in 1984 to an entity which ultimately became known as Reserve Coal Properties Company. On June 28, 2004, 27 years after [Appellants] conveyed away the premises, Reserve Coal Properties Company conveyed the property to [Appellee], Scott A. Gongaware, providing that the same was ---

> UNDER AND SUBJECT to all exceptions, reservations and all other matters affecting title as set forth in the deed from Randy E. Hoffman and Sherry L. Hoffman, his wife, to Consolidation Coal Company dated October 12, 1977 and recorded in deed book volume 812, page 646.

> There is no suggestion that Consolidation Coal Company or its successors ever gave [Appellants] notice to remove the timber.

> Sometime prior to 2012, [Appellee], Scott A. Gongaware, entered into an agreement with [Appellee], Kern Brothers Lumber Company, to harvest the timber upon the real estate. [Appellants] learned of the harvesting of timber in 2012, and for these purposes, it is undisputed that the harvesting was done without the knowledge or consent of [Appellants].

> [Appellants] bring their action against both the [Appellee] landowner, Scott A. Gongaware, and the timber removal contractee, Kern Brothers Lumber Company, for damages in conversion, unjust enrichment, and statutory treble damages under 42 Pa.C.S.A. §8311.

> [Appellees] demur to the causes of action on the theory that [Appellants] had no actionable claim to the timber at the time [Appellees] commenced timber removal operations.

Trial Court Opinion, 1/10/17, at unnumbered 1–3. Finding that Appellants had "no property interest, either real or personal, in the timber existing on the premises at the commencement of these proceedings," the trial court sustained Appellees' preliminary objections and dismissed Appellants' case.

- 4 -

*Id*. at unnumbered 6. Appellants filed a timely notice of appeal on January 19, 2017. Both Appellants and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellants present the following questions for our review:

I. Whether the Lower Court erred in granting Appellees' Preliminary Objection in the nature of a demurrer based on facts and factual inferences not made in the Appellants' Complaint?

II. Whether the Lower Court erred in sustaining the Appellees' Preliminary Objection in the nature of a demurrer as Appellants' Complaint met the extremely low standard for surviving a demurrer?

III. Whether the Lower Court erred in sustaining the Preliminary Objection in the nature of a demurrer based on the reasoning that the timber reservation was that of personal property and that Appellants had to remove the timber in a reasonable amount of time?

IV. Whether the Lower Court erred in granting Appellees' Preliminary Objection in the nature of a demurrer since under the facts pled Appellants can recover under every cause of action brought forth in the Complaint?

Appellants' Brief at 3.

"An appeal from an order granting preliminary objections in the nature of demurrer is subject to plenary review." ***Erdely v. Hinchcliffe and Keener, Inc.***, 875 A.2d 1078, 1081 (Pa. Super. 2005). When determining whether the trial court properly sustained the preliminary objections, this Court will examine the "averments in the complaint, together with the documents and exhibits attached thereto." ***Id***. Further:

The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision

regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

***Clausi v. Stuck***, 74 A.3d 242, 246 (Pa. Super. 2013) (quoting ***Conway v. The Cutler Group, Inc.***, 57 A.3d 155, 157–158 (Pa. Super. 2012)).  "If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections."  ***Haun v. Community Health Systems, Inc.***, 14 A.3d 120, 123 (Pa. Super. 2011) (quoting ***Hykes v. Hughes***, 835 A.2d 382, 383 (Pa. Super. 2003)).

In support of their first issue, Appellants contend that the trial court erred when it relied on "facts and factual inferences" not contained in the complaint.  Appellants' Brief at 9.  Specifically, Appellants argue that the trial court erred when it found that the property at issue was conveyed for "anticipated coal operations" because the complaint was void of any factual averments indicating the same.  ***Id***. at 9–10 (quoting Trial Court Opinion, 1/10/17, at unnumbered 5).

Although Appellants did not make any averments regarding the anticipated operations on the property, they attached a copy of the 1977 Deed to their complaint.  Complaint, 4/22/2015, Exhibit B.[2]  The 1977 Deed

---

[2] Appellants also attached a copy of the 2004 Special Warranty Deed, which conveyed the land from Reserve Coal Properties (an affiliate of Consolidation Coal Company) to Appellee Gongaware, to their complaint.  Complaint, 4/22/2015, Exhibit A.

contained the following language, "EXCEPTING AND RESERVING all coal mining rights previously conveyed by predecessors in title." *Id*. at Exhibit B. Additionally, the 1977 Deed addressed the Appellants' ability to harvest the timber from the land as follows, "grantors . . . must exercise said right upon six (6) months written notice by the grantee . . . and provided further, that such operations by the grantors . . . **do not interfere with the coal mining operations of the grantee** . . ." *Id*. (emphasis added).  We also note that the 1977 Deed includes a reservation of the grantors' rights relating to the oil and gas underlying the property, which allowed grantors to remove the oil and gas, so long as those operations do not interfere with coal mining operations. *Id.*  The trial court properly considered the appended 1977 Deed and, in view of the above quoted language, did not err when it found that the property was conveyed for anticipated coal operations.  *See, e.g., Detweiler v. School Dist. Of Borough of Hatfield*, 104 A.2d 110, 113 (Pa. 1954) (finding no error where trial court considered agreements attached to defendant's demurrer because those agreements were acknowledged and relied upon by plaintiffs to establish their claims).

The trial court also concluded, however, that "[c]oal mining operations, for surface mining, would be inconsistent with the preservation of timber due to the requirement to remove the surface overburden above the coal seam." Trial Court Opinion, 1/10/17 at unnumbered 5.  Appellants allege that the trial court went beyond the permitted scope of material when it determined that

the property was to be used for surface mining, as opposed to underground mining. Appellants' Brief at 9–10. We agree. Neither the complaint nor the appended 1977 Deed indicates that the property was to be used for surface mining. It is not clear whether this information was contained in documents not properly before the court on preliminary objections or simply an unsupportable inference made by the trial court. Regardless, it was an impermissible consideration in deciding preliminary objections in the nature of a demurrer and tainted the trial court's conclusion that Appellants did not have an actionable claim, as discussed in more detail below.

Appellants' remaining issues focus on the trial court's ultimate conclusion that Appellants did not have an interest in the timber Appellees harvested. More specifically, they argue that the trial court erred in finding that the timber-reservation clause contained in the 1977 Deed constituted a reservation of personal property. The trial court further found that because the timber-reservation clause was an interest in personal property, Appellants had to remove the timber within a reasonable time. The trial court concluded that Appellants failed to do so, and that their rights to the timber were thus extinguished. Trial Court Opinion, 1/10/17, at unnumbered 5–6.

Appellants aver, to the contrary, that the timber-reservation clause constitutes a reservation in realty, not personal property, and point to the language contained in the 1977 Deed. Appellants' Brief at 13. Appellants assert that the language reserving rights for "their heirs and assigns" in the

timber-reservation clause gives Appellants a perpetual right to enter the property and remove the timber. *Id*. at 13–14. They argue that the second part of the conveyance, which provides that the grantors, heirs, and assigns must exercise the right to remove the timber upon six months of the grantees' written notice, constitutes a condition subsequent. *Id*. at 14. Appellants assert that written notice by Appellees, followed by Appellants' failure to remove the timber over the subsequent six months, is the only way that Appellant's interest in the timber can be extinguished pursuant to the terms of the Exception and Reservation clause in the 1977 Deed. *Id.* Because Appellees have not given any such notice to them, Appellants contend the condition subsequent has not occurred, and their right to the timber on the property has not been extinguished. *Id*.

Appellants further aver that the trial court erred in granting the Appellees' preliminary objections because, under Pennsylvania statutory law, a reservation of timber rights constitutes an interest in land, not personal property. Appellants' Brief at 16. Appellants rely on the statute governing timber deeds, which states:

> It shall be lawful for the owner or owners of land, timber or bark, or for any person or persons having an interest therein, to grant, bargain and sell, or contract to sell, by deed, conveyance or contract in writing, signed by the grantor or grantors therein, and proved or acknowledged by them, as now required by law of this commonwealth for the signing and acknowledging of deeds, all or any right, title, claim or interest such grantor or grantors may have in or to any standing or growing timber, or the bark thereon, upon any lands in this commonwealth; and *any such deed,*

*conveyance or contract shall be taken and deemed as a deed, conveyance or contract conveying and vesting an interest in land*.

21 P.S § 521 (emphasis added).[3]

Although the majority of case law addressing whether timber should be considered real or personal property was handed down over 100 years ago, those holdings remain valid law and inform our decision in this case. Notably, this Court recently addressed this issue and analyzed Section 521 in ***Zitney v. Applachian Timber Products***, 72 A.3d 281 (Pa. Super. 2013). Although the Court ultimately held that a contract for the sale of timber to be removed within twenty-four months was a contract for the sale of personal property, the court extensively discussed Section 521 and the relevant case law.

The ***Zitney*** Court noted that Section 521 was enacted in 1895, and was "bookended" by two cases, ***Appeal of McClintock***, 71 Pa. 365 (Pa. 1872) (decided before the enactment of Section 521) and ***Havens v. Pearson***, 6 A.2d 84 (Pa. 1939) (decided after the enactment of Section 521). Citing ***McClintock*** and ***Havens***, the ***Zitney*** Court noted "that despite the general categorization of 21 P.S. §521, not all timber contracts constitute contracts for the sale of land." ***Zitney***, 72 A.3d at 287–288. Justice Wecht, a former

---

[3] Appellants included a discussion of Section 521 in their brief in response to Appellees' preliminary objections. The trial court, however, failed to discuss, analyze, or even mention Section 521 in its opinion sustaining Appellees' preliminary objections. Indeed, in that opinion, the trial court relied primarily on a case, ***Appeal of McClintock*** 71 Pa. 365 (Pa. 1872), which was handed down well before Section 521 was enacted in 1895.

member of our Court and author of the ***Zitney*** opinion, summarized the facts

and relevant principles established by these cases, as follows:

> In ***McClintock's Appeal***, John Strawbridge conveyed 130 acres of land to Lafayette McClintock, but reserved "all the pine and hemlock timber, also the mineral that may be found on said premises, to his own use and advantage." 71 Pa. at 366. The reservation further provided that, in the event that McClintock wanted to "clear any part of the land," Strawbridge was to remove the timber within thirty days after being notified of McClintock's intentions. ***Id***. Upon Strawbridge's death, McClintock was named as the administrator of Strawbridge's estate. During inventory of the estate, a question arose as to whether the timber reserved on the property now owned by McClintock constituted personal property of the estate. An auditor was appointed, and he determined that the timber was personal property. The Orphans' Court agreed with the auditor. ***Id.*** at 365–66.

> Our Supreme Court affirmed the Orphans' Court, holding that "[i]n agreements for the reservation or sale of growing timber, whether the timber is to be regarded as personal property or an interest in real estate, depends on the nature of the contract and the intent of the parties." ***Id.*** at 366. The Court explained the basis for its rule as follows:

>> If the agreement does not contemplate the immediate severance of the timber it is a contract for the sale or reservation of an interest in land, and until actual severance the timber in such cases passes to the heir, and not to the personal representative. But when the agreement is made with a view to the immediate severance of the timber from the soil, it is regarded as personal property, and passes to the executor and administrator, not the heir.

>> \* \* \*

>> But in the case at hand it is manifest that the parties intended by their contract to divide the pine and hemlock from the freehold, and give to it the quality of a chattel. It was not to be taken off at discretion, as to the time. By the express terms of the deed the vendee of the land had the right to

- 11 -

require the removal on giving, and the vendor was bound to take it off on receiving thirty days' notice. The timber must, therefore, be regarded as a chattel, which passed to the administrator.

* * *

If the reservation had been of a perpetual right to enter on the land and cut all the pine and hemlock timber growing thereon, then it would be ... regarded as an interest in land.

*Id*. at 366–67.

Our Supreme Court reaffirmed these legal distinctions in reviewing the nature of the timber removal contracts in *Havens.* In that case, W.H. Pearson owned, by written contract, the timber growing on 1,300 acres of land owned by someone else. The contract provided Pearson twenty years to cut and remove the timber. *Havens,* 6 A.2d at 85. Following a lien and a judgment, the property was purchased through a sheriff's sale by O.S. Havens. Pearson continued to remove timber from the property after Havens took ownership of it. Havens sought an injunction preventing Pearson from continuing to remove the timber. *Id.* at 86. As in the case *sub judice,* the question became whether the timber contract was for the sale of land or of goods. If the contract was for goods, the timber would not have been subject to the lien, judgment, and subsequent sale.

Although the Supreme Court ultimately held that the contract in *Havens* was for a sale of land, permitting Havens to enjoin Pearson from removing the timber, the Court applied the following principles:

Ordinarily a contract for the sale of standing timber to be cut and removed, or one that gives the purchaser discretion as to the time of removal, is a sale of land within the meaning of the Statute of Frauds. Where, however, timber is to be cut and [removed] by the purchaser **within a definite or reasonable time, it becomes a question of the intent of the parties as to whether a sale of realty, the creation of a chattel real, or a sale of personalty was intended.** It has been stated in many of our cases that the contract to be a sale of

- 12 -

personalty must intend an 'immediate severance'; it would be more accurate to say that the real test is, considering the nature and extent of the land, the number of feet of merchantable timber and the time given for removal, whether the vendor intended the vendee to have an interest in the standing timber as land, or whether he contemplated a removal within a time reasonably necessary therefor, in which case the vendee would have a chattel interest.

*Id*. at 86 (citations and footnote omitted; emphasis added). To illustrate these principles, the **Havens** Court cited **Robbins v. Farwell**, 193 Pa. 37, 44 A. 260 (1899), which held that a six- to seven-year window to remove timber demonstrated that the parties intended the contract to be one for the sale of personal property, and **Patterson et al. v. Graham et al.,**164 Pa. 234, 30 A. 247 (1894), in which the Pennsylvania Supreme Court held that a five-year period to remove timber evinced the intent to create a contract for the sale of personal property.  However, the Court contrasted those cases with **Wilson v. Irvin**, 1 Pennyp. 203 (Pa. 1881), in which the Court held that a nine-year period to remove timber created a contract for the sale of land.  **Havens**, 6 A.2d at 86.

**Zitney**, 72 A.3d at 287–288. (citations edited for clarity).  The **Zitney** Court

also noted that, "[p]er **McClintock** and **Havens**, the critical term is the time

period within which the timber is to be removed."  **Zitney**, 72 A.3d at 289.

Thus, pursuant to well established precedent:

[W]hether growing timber is to be regarded as personal property or an interest in real estate in an agreement for its reservation or sale depends on the nature of the contract and the intent of the parties; that, if the agreement does not contemplate the immediate severance of the timber, it is a contract for the sale or reservation of an interest in land; but that, where the agreement is made with a view to an immediate severance, the timber is to be regarded as personal property.

**Strause v. Berger**, 220 Pa. 367, 370 (Pa. 1908); **see also McClintock**, 71

Pa. at 366 ("If the agreement does not contemplate the immediate severance

- 13 -

of the timber it is a contract for the sale or reservation of an interest in land…").   Indeed, as Appellees state in their brief, "The right to harvest timber depends on the nature of the contract and the intent of the parties . . . ." Appellees' Brief at 3; **see also McClintock**, 71 Pa. at 366 ("In agreements for the reservation or sale of growing timber, whether the timber is to be regarded as personal property or an interest in real estate, depends on the nature of the contract and the intent of the parties.").

The instant case involves a reservation of timber rights in a deed, not a timber contract.  The deed meets the requirements of the Statue of Frauds and was duly recorded as a property interest. Even more importantly, the inclusion of the "heirs and assigns" and "successors and assigns" language relating to both Appellants and Appellees in the timber-reservation clause is evidence that Appellants' interest in the timber is not a short-term, personal-property interest.  **See, e.g., Strycker v. Richardson**, 77 Pa. Super. 252 (Pa. Super. 1921) (finding easement which included "heirs and assigns" constituted a perpetual easement and was not limited to the named grantee). Indeed, there was no question that the timber-reservation was included in Gongaware's deed and that he had notice.  Significantly, the language of the deed did not contemplate the immediate severance of the timber.  In fact, it appears that over thirty-five years passed before the cutting of the timber became an issue.  We further note that there is no language in the timber-reservation that requires Appellants to provide notice or seek permission from

Appellees prior to entering the property and removing the timber. Under these circumstances, we conclude it was premature for the trial court to bar Appellants' claims.

The intent of the parties and the nature of the reservation at issue cannot be determined based upon the pleadings and their attachments in the instant case. Indeed, this is a fact specific inquiry and the trial court will need to look to extrinsic or parole evidence in making its determination. Thus, the matter is not properly disposed of by preliminary objections in the nature of a demurrer. *See*, *e.g.*, ***Bouchon v. Citizen Care, Inc.***, 176 A.3d 244, 254 (Pa. Super. 2017) ("In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred."); ***Kane v. State Farm Fire and Cas. Co.***, 841 A.2d 1038, 1041 (Pa. Super. 2003) ("When considering the grant of preliminary objections in the nature of a demurrer, this Court must resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside the complaint may be considered."). Thus, the trial court erred when it sustained Appellees' preliminary objections.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2018